110   N. Y. Utility Co., Inc., v. Williamsburg S. L. Co., Inc.

Second Department, March, 1919.          [Vol. 187.

New York Utility Co., Inc., Respondent, v. Williamsburg Steam Laundry Co., Inc., Appellant.

Second Department, March 14, 1919.

**Sale — action to recover payment on account of purchase price and for failure of defendant to perform — tender of payment — tender of worthless check — evidence — new trial.**

In an action to recover a payment made at the time of the execution of a contract for the purchase of a laundry and for expenses claimed to have been incurred by reason of said contract and the alleged failure of the defendant to perform the same, the plaintiff claimed that it was ready, able and willing to perform, that it tendered the balance of the purchase price, demanded performance upon the part of the defendant which failed or refused to furnish an agreement not to engage in the laundry business in a certain locality during a limited period, signed by a stockholder and general manager.   Evidence examined, and

*Held*, insufficient to establish a tender on the part of the plaintiff;

That it was a fair question of fact for the jury to determine whether the defendant was able to deliver the agreement not to engage in business and that their finding in favor of the plaintiff is against the weight of the evidence;

That testimony as to damages being undisputed, a judgment awarding to the plaintiff the amount of the money it had paid on account of the contract, but refusing to award it any damages, should be reversed and a new trial granted.

To constitute a valid tender it is necessary to tender a specific amount. The amount must be produced and an actual and unequivocal offer of the same made to the other party.

A tender attempted to be made by a check without money in the bank to pay the same is not good unless the condition of the drawer's account is made known to the payee and he waives objection to it upon the ground that there are no funds or insufficient funds to meet it.

Appeal by the defendant, Williamsburg Steam Laundry Co., Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on or about the 13th day of December, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*John J. Fitzgerald* [*Luke D. Stapleton, William J. Mahon, Louis Kunen* and *Oscar Englander* with him on the brief], for the appellant.

*Jacob L. Holtzmann* [*Edward J. Rose* with him on the brief], for the respondent.

Jaycox, J.:

The plaintiff entered into a contract to purchase a laundry from the defendant. At the time of the execution of the contract the plaintiff paid $2,500 on account of the purchase price. The sale was not consummated, and this action is brought to recover said $2,500 paid on account of the purchase price, and $500 expenses, which plaintiff claims it incurred by reason of said contract and the alleged failure of the defendant to perform the same. The action was tried before the court with a jury, and the jury rendered a verdict in favor of the plaintiff for $2,500, and from the judgment entered thereon and an order denying defendant's motion to set the verdict aside and for a new trial the defendant appeals.

The plaintiff's contention upon the trial was that it was ready, able and willing to perform; that it tendered the balance of the purchase price, demanded performance upon the part of the defendant and that the defendant failed or refused to perform. The defendant's failure or refusal consisted of a failure to furnish an agreement not to engage in the laundry business in a certain locality during a limited period, signed by one Drucker, a stockholder and general manager of the defendant.

The testimony on behalf of the plaintiff as to tender is given by one witness only. He testifies that for the purpose of closing the title the plaintiff furnished him with a check for $4,500 and $1,000 in cash, and that at the time set for closing he attended at the place of closing. The contract in question provides for a payment of $5,400 to the defendant on the day of closing, and $500 to Charles Drucker before the delivery of the bill of sale. Therefore, if no deductions or allowances other than those provided in the contract are made, the amount which plaintiff's witness took with him was insufficient to pay the balance of the amount to be paid

112   N. Y. Utility Co., Inc., *v.* Williamsburg S. L. Co., Inc.

Second Department, March, 1919.          [Vol. 187.

under the contract. It is not disputed that some deductions from the contract amount were to be made, but the witness nowhere testifies to the exact amount of these deductions or the amount that would be due after such deductions were made. Neither does he testify to any amount which he at that time claimed or stated was due. He testifies that an adjournment was requested by the defendant and then continues as follows: " I says: ' No, I will not; here I am, ready, and I am going to wait (*sic*) while you fellows are fighting; I am not going to wait any longer; I have a check for $4,500, and if that isn't sufficient, I got the cash.' I just showed them the bank roll, and he said: ' Lock the door easy ' and I says: ' You don't have to lock the door; you can have the money right now if you want it.' " He testifies to some further things he said, and then continued: " I won't wait; here is my tender. If you give me that bill of sale, you can have the money; if not, I am going." Upon being recalled, he gives this version of the tender: " And I says, ' You get this,' indicating Drucker — I used the very word — I says, ' He has been accusing me what he isn't going to do to me; get him to sign up, that is what we want; get him to sign up and take the bills, and I have got the check.' And I says, ' Here is the check,' and I put it in my hand. They didn't ask me to look at it, didn't ask me to count how much money I have in my pocket. I said, ' Here is the check and here is the money.' They saw the color of the money."

It is very doubtful from this testimony whether the witness offered the defendant any money at all, but it is clear that he did not offer the defendant any definite amount of money. This was insufficient to constitute a tender. If no deductions from the amount to be paid were made, the total amount in the possession of the witness was insufficient.

To constitute a valid tender it was necessary that the witness tender a specific amount. The amount must be produced and an actual and unequivocal offer of the same made to the other party. (28 Am. & Eng. Ency. of Law [2d ed.], 17, 27, 28; 38 Cyc. 137, 138; *Eddy* v. *Davis*, 116 N. Y. 251; *Alpern* v. *Farrell*, 133 App. Div. 278; *Tuthill* v. *Morris*, 81 N. Y. 94.) As the plaintiff neither offered a specific amount to the defend-

ant nor named any specific amount which it was then ready to pay, clearly the plaintiff made no tender calling upon the defendant for either acceptance or refusal. If the defendant had attempted to accept, what would it have obtained? From the testimony of the plaintiff there is no way of determining. The defendant was not required to give a bill of sale upon being paid any amount which the plaintiff might decide upon. It was only required to give a bill of sale upon being paid the amount the contract called for. The tender was ineffectual, therefore, to put the defendant in default.

The plaintiff's witness testifies that he called the defendant's attorney upon the telephone and asked him if a check would be accepted upon the closing, and says the defendant's attorney informed him it would. This is denied by the defendant's attorney, who was sworn as a witness. This presented a fair question of fact, and for the purposes of this inquiry it must be assumed that the jury found that plaintiff's contention was correct in that respect. Upon the trial it was proved without contradiction that the plaintiff, on the day this title was to close, had in its bank account when the bank closed, $2,300.33. The day of closing was Saturday. The bank closed at twelve o'clock and the title was to close at two P. M. Therefore, the plaintiff had in the bank $2,300.33 to meet its check for $4,500. Assuming that the defendant agreed to accept a check, was the tender of this check and $1,000 in cash a tender? No decision directly upon this point has been called to the attention of the court, nor has quite an extended search revealed any. In *Clifton* v. *Mackauf* (87 Misc. Rep. 105) and *Link* v. *Mack* (25 id. 615) are expressions which indicate that a check without funds to meet it is of no value as a tender. In both instances these expressions are connected with statements as to keeping the account good. These expressions do not detract in any way from *these* cases as authorities to the effect that a check must be good at the time of its tender. In *Clifton* v. *Mackauf* (*supra*) it is said: " The defendant alleges tender to defeat the recovery of rent, but as the payment was sought to be made by check, and concededly the defendant did not keep her account good, and did not make her tender good previous

114    N. Y. Utility Co., Inc., *v.* Williamsburg S. L. Co., Inc.

Second Department, March, 1919.          [Vol. 187.

to the commencement of the action, I do not find her defense proven, and, therefore, dismiss it from further consideration." In the statement of facts preceding the opinion in *Link* v. *Mack* (*supra*) it is stated that the account of the drawer of the check was then and thereafter, down to the commencement of the action, kept good for the proposed amount of the check. The tender in that case was held to be good in an opinion by Hiscock, J. The head note says: " A tender by check, not objected to upon the ground that it is not money, is valid where the check is kept good." In the American and English Encyclopedia of Law (Vol. 28, p. 27) it is said: " And if a check is tendered by a debtor who has sufficient money in bank to pay it, and the creditor refuses to receive it on some other ground than that it is a check, the tender is valid." In Hunt on Tender (§ 83) it is stated: " Where a debtor tenders his check, he must have, at the time of the tender, sufficient funds with the depositary to meet it. If there is a total absence of funds, or the amount on deposit is less than the amount of the check, the tender is not good, and it will not avail the debtor that he had funds elsewhere which he intended to deposit to meet the check, or, that the banker had promised to take care of it, unless the latter had actually placed the required amount to the debtor's credit prior to the time of the offer of the check. Failing in this, the tenderee may show that a tender was not in fact made by proving that the tenderor was not ready at the time, regardless of all questions of waiver by failing to object to the check at the time it was offered to the tenderee. So, if the debtor has funds on deposit, but has put other checks out which cover in part, or the entire balance necessary to meet the check offered, the tender is not good. A creditor is not bound to enter into a race of diligence with other creditors holding checks. So, if the funds on deposit are subject to a lien of the bank for a debt due it, the offer of the check would not be good. The question whether the bank would have waived its lien is immaterial. There must be no question as to the right of the tenderee to the funds on deposit."

The defendant by agreeing to accept a check did not agree to accept a worthless check. At the time this check was offered it was absolutely worthless in so far as it would have

enabled the defendant to draw any money out of the bank. A valid check, when it is accepted, constitutes payment. This check, if accepted, would have had no such effect. If a check is good without sufficient funds to meet it, then a check upon a bank where the drawer has no account is equally good. It is urged that the plaintiff might have deposited money to make the check good. That is true. The defendant, however, agreed only to accept an order for the payment of money — the present payment of money and not the promise to pay at some future time. A tender attempted to be made by such a medium is not good unless the condition of the drawer's account is made known to the payee and the payee waives objection to it upon the ground that there are no funds or insufficient funds to meet it.

In *Ziehen* v. *Smith* (148 N. Y. 558) it was held that if the vendor of real estate under an executory contract is unable to perform on his part at the time provided by the contract, a formal tender and demand on the part of the vendee is not necessary in order to enable him to maintain an action to recover the money paid on the contract. Under the contract in suit, the defendant was to deliver at the time of closing " an agreement signed by Herman Kraut, Charles Drucker and Samuel Hausman, wherein the said parties will agree not to engage in the wholesale steam power laundry business in the Greater City of New York for a period of two years from the date hereof." It is conceded that Herman Kraut and Samuel Hausman executed this agreement, but the plaintiff contends that Charles Drucker declined to sign such an agreement and that the defendant was unable to deliver this agreement as called for by the contract. Upon the record, this presents the only question of fact in the case. The testimony is not clear that at any time the attorney who represented the defendant upon the closing said or conceded in any way that the defendant was unable to deliver this agreement. There is testimony, however, upon the part of the plaintiff to the effect that Drucker refused to sign and the jury may have been justified in finding that this refusal occurred in the presence of the attorney representing the plaintiff upon the closing. It is apparent that the defendant's attorney had full and complete charge of the closing. If he

**116**   N. Y. Utility Co., Inc., *v.* Williamsburg S. L. Co., Inc.

Second Department, March, 1919.        [Vol. 187.

said the defendant could not deliver Drucker's agreement, or if he permitted that to be asserted by Drucker or any one else at the time of closing and did not contradict it, the plaintiff would be justified in assuming that the defendant could not deliver the agreement and act accordingly. It was, therefore, a fair question of fact for the jury to determine whether the defendant was able to deliver Drucker's agreement or not. Upon this question the jury has found in favor of the plaintiff. The evidence upon it, however, is overwhelming in the defendant's favor.

Upon the day of closing no officer of the plaintiff attended at the closing. The plaintiff was represented solely by its attorney. The resolution passed by the plaintiff in relation to the purchase of the defendant's laundry does not authorize the attorney to close the contract. In fact, he is not mentioned in it. The secretary and general manager of the plaintiff is authorized to make the purchase upon the terms stated therein. The check which the plaintiff's attorney claims he took with him was not taken from the plaintiff's check book in regular order. It is claimed that this check was taken from the back of the book. No entry in relation to it was made upon the stub. After the transaction fell through, it is claimed that this check was returned to the secretary and general manager and he claims to have destroyed it. These facts of themselves indicate quite strongly that the plaintiff did not attempt in good faith to close this transaction. It is now claimed that upon the closing plaintiff's attorney waived every objection except the failure to furnish Drucker's agreement. No authority to make such waiver, however, is shown. At the time of closing the plaintiff's attorney dictated many pages of objections. It seems strange that he should have gone through this idle ceremony only to waive the objections the next moment. Plaintiff's attorney is the only witness who testifies that the defendant was unable to deliver the agreement signed by Drucker. One other witness testifies that he sat in a chair in an outer room and at one time during the afternoon he heard Drucker say, " I wouldn't sign, I wouldn't sign," and then Drucker went back into the private office. Some other parts of his testimony indicate that he was testifying to another interview. Assuming, however,

that his testimony relates to the time of closing, it is apparent from it that Drucker went back into the private office and stayed some time, while the witness read a newspaper in the outer office, and what then occurred he does not know.   On the part of the defendant, the attorney representing the defendant at the time of closing testified that Drucker did sign the agreement and that the bill of sale, agreement and all papers were ready at the time of closing.   The agreement signed by Drucker and the other papers are produced and offered in evidence.   The stenographer who took down the objections made by the plaintiff at the closing produced these objections and they contain no statement that the defendant refused to deliver the agreement signed by Drucker.   These notes, however, do contain this sentence: " Mr. Rose refuses to make any tender of the money unless proper papers are delivered."   This is followed by a statement of objections to the bill of sale.   A lawyer from another office testifies that he was present when the attorney representing the defendant offered to deliver the papers and the laundry to the plaintiff and he testifies that he did not hear a word said about Drucker not signing the agreement.   Drucker, Hausman and Kraut all swear that the agreement was signed and ready for delivery at the time of closing.   The jury, instead of considering the evidence, undoubtedly decided that it would be the equitable thing to return the parties to the same position they were in before making the contract.   They, therefore, awarded to the plaintiff the amount of money it had paid on account of the contract but refused to award it any damages.   The testimony as to the damages was undisputed.   It, therefore, seems clear that this must have been the method pursued in deciding this case.

The judgment and order denying the motion for a new trial should be reversed and a new trial granted, costs to abide the event.

Jenks, P. J., Mills and Putnam, JJ., concurred; Kelly, J., concurred in the result.

Judgment and order denying motion for new trial reversed and new trial granted, costs to abide the event.