In the Matter of ATLANTIC CEMENT COMPANY, INC., Petitioner, *v.* JOSEPH H. MURPHY et al., Constituting the State Tax Commission, Respondents.

Third Department, October 22, 1968.

*Sullivan & Cromwell* (*Kendyl K. Monroe* of counsel), and *DeGraff, Foy, Conway & Holt-Harris* (*John T. DeGraff* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Edwin R. Oberwager* and *Ruth Kessler Toch* of counsel), for respondents.

HERLIHY, J. P. Prior to December 10, 1963 Prudential had agreed in principle to advance $8,000,000 to Atlantic for a forward sale of limestone. At a meeting held December 20, 1963 Atlantic's board of directors authorized execution and delivery of an '' Indenture of Conveyance of Atlantic Production Payment '' (the instrument in issue in this case). The indenture of conveyance of Atlantic production payment was delivered by Atlantic to Prudential on January 22, 1964. This instrument purported to convey an undivided 70% interest in the limestone in the New York State property, but it also contained the following language: '' until Grantee [Prudential] shall have received and realized, out of the PP Limestone, the full aggregate sum of the amounts below [$8,000,000] * * * free and clear ''. Under the terms of the instrument, the grantee (Prudential)

could only receive, either in kind or by cash payments, the principal amount of $8,000,000 and interest together with all necessary expenses incurred.

Prudential delivered its check for $8,000,000 and recorded the instrument in the Albany County Clerk's office. The County Clerk did not collect any mortgage recording tax and the present proceeding resulted from a hearing before the respondent Tax Commission in regard to such tax.

In order to carry out the terms of the present instrument, it was necessary for a group of banks, which had provided a revolving credit for Atlantic, to consent to waive that part of their agreement which prohibited the creation of liens on Atlantic's property without the consent of the group. It was also necessary for the trustees under the original financing of Atlantic to release the mineral interest in Atlantic's limestone reserve from the lien of that mortgage, it further appearing that the mortgage bondholders (Prudential) had consented, so that the limestone reserves were then used as security to the extent of 70% for the present instrument and 30% allocated to the original financing. In other words, under the original financing by Prudential, the collateral security was 100% of the reserves. At the time of the present financing, Prudential released 70% of the reserves to be used as collateral security for the new instrument.

On this appeal the Attorney-General raises for the first time the additional issue that the consideration in the instrument created a new debt as shown by the financial statement of Atlantic.

The petitioner herein resists the imposition of the tax upon the theory that, because the instrument being questioned is on its face a deed or conveyance of real property interests, the respondent commission was without power to hold it to be merely a mortgage. In *Matter of Drobner* v. *Chapman* (275 App. Div. 520, 523) this court stated the test as being whether " the respondent Tax Commission's determination has support in the record and a reasonable basis in law." It is well established that an instrument which purports to be a conveyance of real property in fee may in fact be a mortgage depending upon the circumstances surrounding the giving of such an instrument (cf. *Procho* v. *Procho*, 30 A D 2d 615).

Whether or not this court would find under the common law and/or statutes the subject instrument to be a mortgage upon the present record is not the test (*Matter of Drobner* v. *Chapman*, *supra*). The question is whether or not under the Tax Law this could be taxed as a mortgage by the State.

Section 250 of the Tax Law provides in part: " The term ' mortgage ' as used in this article [11] includes every mortgage or deed of trust which imposes a lien on or affects the title to real property, notwithstanding that such property may form a part of the security for the debt or debts secured thereby." (See, also, Real Property Law, § 320.)

The intention of the parties is the only true and infallible test and this intention may be gathered from the oral testimony, the circumstances attending the transaction, the conduct of the parties, as well as from the face of the written contract. (See *60 Columbia St.* v. *Leofreed Realty Corp.,* 110 N. Y. S. 2d 417, affd. 281 App. Div. 969; *Chase Nat. Bank* v. *Tover,* 245 App. Div. 615; *Zivotosky* v. *Max,* 190 Misc. 1044, affd. 276 App. Div. 792.)

In the instant case the grantor convenanted to maintain and develop the property, continuously mine it, quarry it and otherwise operate it for the production of limestone. It also covenanted to pay all liability incurred in quarrying, mining, producing, treating, processing, storing, marketing or transporting the limestone. In addition, it would keep all the mining and processing machinery in good repair and would pay all ad valorem taxes and all mining taxes imposed. In substance it would maintain full control over the property.

The present instrument is at best a conveyance of a fee in mineral rights which will terminate upon the happening of a condition: i.e., payment of $8,000,000 plus certain annual sums. The testimony upon the hearing amply supports the conclusion that the parties entered into the present title situation for the purpose of advancing and borrowing some $8,000,000 and securing the repayment of such $8,000,000. The so-called " Incremental Accrual " of 5⅝% per annum on unpaid balances of the $8,000,000 can readily be found to be simply interest charges as in any lending situation. The instrument itself does not define the term " Incremental Accrual " as mineral use rentals or interest. The method of repayment is substantially the same as that alternatively set forth in many leasehold mortgages (see 12 Bender's Forms, § 1627).

From a reading of the record, it becomes apparent that the " production payment " is a device which attempts to return to the old title concept of mortgages, whereby the mortgagee was actually given title to the property as security rather than simply a lien. The courts no longer permit an instrument, which is in actuality a means of giving security for a loan, to be considered anything but a mortgage. The present instrument is no exception to this long-established rule.

It was held in *People* v. *Gass* (206 N. Y. 609, 616): "None of these definitions [Tax Law, § 250] tends in any way to restrict the meaning of the word 'mortgage'. They all tend rather to broaden it." Upon the present record we cannot say as a matter of law that the Tax Commission erred in determining that the subject instrument constituted a mortgage within the meaning of the Tax Law. There is substantial evidence to sustain the determination.

The determination should be confirmed.

REYNOLDS, AULISI, STALEY, JR., and GABRIELLI, JJ., concur.

Determination confirmed, with costs.