■ THALIA CORCILLO, Appellant, v MARTUT, INC., et al., Defendants, and ERHAL HOLDING CORP., Respondent.—In a mortgage foreclosure action, plaintiff appeals from a judgment of the Supreme Court, Westchester County, entered September 20, 1976, which, after a nonjury trial, *inter alia,* (1) dismissed the complaint on the merits, (2) adjudged that defendant-respondent Erhal Holding Corp. is the fee owner of the premises, (3) adjudged that the said defendant properly tendered payment of the mortgage payments due on January 1 and February 1, 1975 and was not legally obligated to tender mortgage payments for months subsequent to February, 1975, (4) adjudged that the mortgage debt in the principal sum of $42,168.84 remained due and owing from January 1, 1975 at 6% interest and (5) referred the counterclaims to another Part for disposition. Judgment reversed, on the law and the facts, with costs, and it is directed that plaintiff have judgment on her complaint and that all counterclaims be dismissed. Action remitted to Special Term for further proceedings not inconsistent herewith. In our opinion plaintiff, the holder of a second mortgage, established the allegations of her complaint, and we find that the counterclaims of respondent Erhal Holding Corp. are without merit. We note that the sum of $464.20 was due plaintiff for January, and again for February, 1975, under the *mortgage* (which Erhal recognizes), as well as under the extension agreement of February 1, 1974, executed by plaintiff and defendant Martut, Inc., which extension agreement respondent Erhal claims is not binding on it because, *inter alia,* it obtained title to the property by virtue of an absolute conveyance from Martut by deed dated January 29, 1974 and recorded January 31, 1974. The January and February, 1975 sums due were never paid to plaintiff. Erhal's "tender" of certified checks for those payments, in effect, was conditioned upon plaintiff's agreement that the extension agreement, with its 9% interest rate, was not binding Erhal and that the "proper" interest rate was 6%, in accordance with the second mortgage prior to .its extension. This, despite the fact that plaintiff had entered into the extension agreement with Martut on February 1, 1974 partially as an inducement to discontinue a prior foreclosure action against Martut, which action Erhal, as fourth mortgagee, sought to have discontinued. There was no dispute as to the fact that $464.20 became due for January, 1975 and another $464.20 became due for February, 1975. Thus there was no lawful basis for the failure to make a direct and unequivocal payment to plaintiff of those amounts. There was no lawful basis for the conditions attached to Erhal's tender. "The amount must be produced and an actual and unequivocal offer of the same made to the other party" *(New York Utility Co. v Williamsburg Steam Laundry Co.,* 187 App Div 110, 112; *Frost v Yonkers Sav. Bank,* 70 NY 553, 557-558). Further, we find that on the basis of all of the evidence, Erhal, in 1974, was well aware of the extension agreement and its 9% interest rate—as evidenced by its letter to plaintiff's attorney dated

January 21, 1974 and the subordination agreement of February 1, 1974, signed by Erhal's president. Erhal claims, however, that the subordination agreement was delivered in escrow in connection with an aborted transaction and that it is not bound by the extension agreement executed on February 1, 1974 by plaintiff and Martut, because the latter transferred title to Erhal on January 29, 1974, the deed having been recorded on January 31, 1974. In its decision the trial court correctly held: "It is well established that where a deed is given as security, it becomes a mortgage by operation of law (McKinney's Real Property Law, § 320), and where the deed is accompanied by a written instrument showing that it is intended as security only, it is a mortgage regardless of its terms (Warren's Weed, New York Real Property, Vol. 3A, § 1.01), and the mortgage tax must be paid. To establish that the deed was meant only as security, examination may be made not only of the deed and a written agreement executed at the same time, but also to oral testimony bearing on the intent of the parties and to a consideration of the surrounding circumstances and acts of the parties (*Mooney v. Byrne,* 163 N.Y. 86, rearg. den, 164 N.Y. 585; *Matter of Newcourt Realty Holding Corp. v. Gabel,* 28 AD2d 704)." The parties do not dispute the above principles; they differ on whether or not the application of those principles established that the January 29, 1974 conveyance from Martut to Erhal was in fact a mortgage transaction. We find that, applying the principles stated by Special Term, the January 29, 1974 transfer is clearly a mortgage and that, accordingly, Martut was the owner of the property on February 1, 1974 and the extension agreement of that date is valid and binding. We reach this conclusion based upon a close examination of the text of the loan agreement, the deed, the leaseback from Erhal to Martut, the promissory note, etc., all dated January 29, 1974. The provisions of these documents, without doubt, express a mortgage transaction. Although Erhal contends that the loan agreement was executory and never went into effect, this is belied by extensive evidence, including the following: 1. Erhal's letter of January 21, 1974. In effect, the letter is divided into two parts. The first part deals with discontinuance of the prior foreclosure action and the execution of an *extension agreement* at *9%.* The letter clearly indicates that this has been *agreed* upon. The *second* part of the letter refers to the *separate,* further *suggested* transaction which is the core of the loan agreement and which Erhal says never came to fruition. 2. The lease from Erhal to Martut and the deed from Martut to Erhal are inextricably tied into the loan agreement. For example, (a). The lease provides: "This lease is signed simultaneously with a certain loan agreement dated January 1974, and subject to terms contained therein. Upon compliance with the terms of such loan agreement of all obligations contained therein, the tenant shall have the option to repurchase subject premises." (b). The loan agreement provides: "The Borrower [Martut] will give to the Lender [Erhal] a deed of conveyance of the above property which deed shall bear the legend: 'It is the intention of the parties that this deed shall not merge with mortgages recorded in Liber 6632/401 and 7517/1' ". (c). The deed concomitantly provides: "This DEED is given in lieu of foreclosure for mortgages recorded in Liber 6632 cp 401 and Liber 7517/1 cp 1, and it is intended by the parties that such deed shall not merge with such mortgages." [Liber 7517/1 is Erhal's fourth mortgage, as corrected.] Further, Martut's president, Anthony Ippolito, executed the January 29, 1974 deed from Martut to Erhal and also the extension agreement of February 1, 1974; and in the document entitled "Settlement Agreement", dated June 30, 1975, between Martut and Erhal, Martut and Ippolito "acknowledge and agree that Erhal

is the fee owner". Despite all of this, Erhal did not produce either Ippolito or Martut's attorney, Gerald Brown, who had prepared the deed of January 29, 1974. We find no legal merit to any of Erhal's counterclaims. We specially note that Erhal three times challenged the ex parte appointment of the receiver and three times Special Term rejected Erhal's request to vacate that appointment. The trial of this action was held January 5 through 7, 1976. On June 30, 1976 the court rendered its decision, dismissing plaintiff's complaint, and stated: "The many counterclaims of Erhal for damages are referred to Special Term, Part IIIA of this Court, as the writer of this opinion lives in the vicinity of the premises in question and feels that it would be improper for him to pass upon these claims." In view of our dismissal of all counterclaims, it is unnecessary to determine the question of whether, by the above disposition, the trial court found in favor of Erhal on the *liability* issue and was within its rights in referring the *damage* question to Special Term, Part IIIA. Were we to reach the issue, however, we would decide that the trial court referred to Special Term, Part IIIA the issues of counterclaim *liability,* as well as damages, but that such disposition was an improvident exercise of discretion requiring a new trial on both the complaint and the counterclaims. Plaintiff should have been advised prior to the taking of testimony of the facts which the Trial Judge set forth in referring the counterclaims to another Part in order that she could ask the court to disqualify itself, not as a matter of law, but as a matter of conscience. Under the circumstances of this case, fairness and judicial efficiency were not best served by trying the foreclosure action and then, six months later, upon the dismissal of the complaint, requiring plaintiff to face a second trial before a different Judge on the counterclaim issues. This is particularly so because the credibility of witnesses was crucial and the issues of the complaint and counterclaims were intimately interwoven. Martuscello, J. P., Latham, Margett and O'Connor, JJ., concur.