■ In the Matter of TRANS WORLD AIRLINES, INC., Petitioner, v NEW YORK STATE TAX APPEALS TRIBUNAL et al., Respondents. [619 NYS2d 190] —White, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained an assessment of mortgage recording tax imposed under Tax Law article 11.

In 1966, National Airlines, Inc. (hereinafter National) leased property at John F. Kennedy International Airport from the Port of New York Authority (hereinafter the Port Authority) with the understanding that it would construct a passenger terminal on the leased property. So that the debt incurred in the construction of the terminal would not appear on its

balance sheet, on April 10, 1968 National assigned its lease with the Port Authority (hereinafter the Port Authority lease) to Naterm Corporation, a wholly owned corporation of Smith Barney & Company, Inc. that was created solely to serve as the financing vehicle for the construction of the terminal. Naterm, in turn, subleased the property back to National in return for rental payments (hereinafter the National sublease).

Also on April 10, 1968, the Port Authority, National and Naterm entered into an operating agreement in which Naterm, *inter alia,* agreed to advance construction funds to National. Naterm obtained the funds from a sale of notes issued under a trust indenture between it and Morgan Guaranty Trust Company of New York. Although National was not an obligor on the notes, National, Naterm and Morgan Guaranty entered into a security assignment wherein Naterm assigned the Port Authority lease to Morgan and National agreed to pay Morgan the rents due Naterm under the National sublease.

The Port Authority lease and its assignment to Naterm were recorded without payment of the mortgage recording tax in Queens County in 1968. On January 31, 1983, the National sublease, the operating agreement and the security assignment were recorded. On this occasion, a mortgage recording tax was paid, calculated in accordance with the 1983 tax rate rather than the lower 1968 rate.

In June 1986 petitioner* submitted to the Department of Taxation and Finance an application for a partial refund of the mortgage recording tax, claiming that it should have been calculated in accordance with the 1968 tax rate. The application was denied. The Administrative Law Judge (hereinafter ALJ), however, found that the assignment of the Port Authority lease was a mortgage and concluded that the 1968 tax rate should have been utilized. Respondent City of New York filed an exception to the ALJ's determination. Respondent Tax Appeals Tribunal reversed the ALJ's determination on the ground, *inter alia,* that the assignment of the Port Authority lease was not a mortgage. Petitioner then commenced this CPLR article 78 proceeding challenging the Tribunal's determination.

---

* Petitioner has standing to maintain this proceeding by virtue of an assignment from Pan American World Airways, Inc. (hereinafter Pan Am) of all of its rights to any refund of the mortgage recording tax, which rights Pan Am acquired when it merged with National in 1980.

Tax Law § 250 defines a mortgage as "every mortgage or deed of trust which imposes a lien on or affects the title to real property" (Tax Law § 250 [2]). Whether the subject assignment falls within the ambit of this definition depends upon the intention of the parties as gathered from their testimony, the circumstances surrounding the transaction, the conduct of the parties, as well as from the terms of the assignment (see, *Matter of Atlantic Cement Co. v Murphy,* 30 AD2d 456, 458, *affd* 28 NY2d 502).

The terms of the subject assignment recite that it was executed by National "in order to facilitate the construction of the Passenger Terminal Facilities". Notably absent from the assignment is a defeasance clause, language indicating that there is a debt outstanding, or that the assignment is to operate as a security device. In fact, the repayment of the notes was secured by the other documents such as the operating agreement and the security assignment. Another factor militating against the assignment being considered a mortgage is that National was not an obligor on the notes, its sole obligation being limited to the payment of rent.

When questioned as to what the purpose of the assignment was, National's attorney testified that it was to transfer title to the leasehold interest to Naterm so that Naterm would be able to execute security agreements mortgaging the leasehold interest. He further testified that it was his understanding that the assignment would not be subject to the mortgage recording tax upon its 1968 recording.

Despite this evidence supporting the Tribunal's determination, petitioner maintains that the Tribunal erred because it examined the assignment in isolation whereas it should have examined the entire transaction out of which it arose. Had it done so, petitioner claims, it would have seen that the assignment was an integral part of a mortgage transaction.

Inquiry into the circumstances giving rise to a document is appropriate to determine if a recorded document, absolute on its face, is actually a mortgage subject to the recording tax (see, *Corcillo v Martut, Inc.,* 58 AD2d 617, *affd* 45 NY2d 878). Where, as here, such an inquiry reveals that the recorded document is not a mortgage, the fact that it may be associated with a mortgage transaction is irrelevant since the mortgage recording tax may only be imposed when a mortgage is recorded (Tax Law § 253 [1]).

We have considered and rejected petitioner's other arguments. Therefore, we shall confirm the Tribunal's determination as it is supported by substantial evidence.

Cardona, P. J., Mercure and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.