**Scott P. ALLEN and Jessica Allen, Plaintiffs,**

v.

**UNION FEDERAL MORTGAGE CORP. and Lawyers Title Insurance Corporation, Defendants.**

No. CV 01–4078.

United States District Court, E.D. New York.

June 11, 2002.

Scott P. Allen, Jessica Allen, Manorville, New York, plaintiffs pro se.

Twomey, Latham Shea, Kelley, LLP by Janice Snead, Martin D. Finnegan, for defendants Union Federal Mortgage Corporation and Lawyer's Title Insurance Corporation, Riverhead, New York.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a case commenced by Plaintiffs Scott Allen and Jessica Allen ("Plaintiffs" or the "Allens") alleging various violations of law relating to a home equity loan applied for in connection with their residence. Presently before the court is the motion of Lawyer's Title Insurance Corporation ("Lawyers Title") for summary judgment on their counterclaim seeking a declaration that an equitable mortgage exists between Lawyer's Title and the Allens. Also before the court is the Allens' cross-motion to dismiss this counterclaim.[1] For the reasons that follow, the motion declaring an equitable mortgage is granted.

---

**1.** Pursuant to an order of the Magistrate Judge assigned to this matter, Lawyers Title Insurance Company has been substituted as a defendant herein for former defendant Countrywide Home Loans, Inc.

## BACKGROUND

### I. The Parties, the Loan Application and the Closing

Scott and Jessica Allen are a married couple residing at 8 Simpson Gate in Manorville, New York. On February 11, 2001, the Allens executed and delivered to Union Federal Mortgage Corporation ("Union Federal") a residential loan application seeking a mortgage in the amount of $272,000 at an interest rate of 6.875%. The loan was a home equity loan to be secured by the Allens' Manorville home (the "Subject Premises").

The loan application was approved and a closing took place on March 30, 2001. At the closing, the Allens executed and delivered a note, setting forth an itemization of the amount financed and evidencing their intent to pay $272,000 to Union Federal. A copy of that note is annexed to the affidavit of the attorney handling the closing on behalf of Union Federal.

As discussed in greater detail below, the proceeds of the $272,000 borrowed by the Allens were used to pay off two existing mortgages on the Subject Premises as well as three separate credit card debts. Copies of checks evidencing the payment of these mortgages are also before the court. After payment of the mortgages and other existing credit obligations, the Allens were left with approximately $32,000 to use as they saw fit. A copy of the "HUD 1" statement, setting forth the disbursement of the funds borrowed by the Allens, is before the court. That document, like every other closing document before the court, bears the Allens' signatures.

At the closing, Lawyers Title issued a policy of title insurance in the loan amount to Union Federal whereby Lawyers Title

insured title with respect to the mortgage. After the closing, Union Federal assigned its interest in the mortgage to Country-wide Home Loans, Inc. ("Countrywide").

## II. *The Allens' Lawsuit*

After the closing and the disbursement of the loan proceeds, the Allens brought this action claiming that they never intended to enter into the loan transaction. The case was commenced by order to show cause and was supported by the Allens' affidavits arguing that no loan existed. A temporary restraining order ("TRO") prohibiting any collection activity was entered and a hearing date was set.

## III. *The July 6, 2001 Hearing Before This Court and Vacatur of the TRO*

At a hearing held before this court on July 6, 2001, testimony was taken from the attorney who handled the closing as well as from the Allens. Extensive documentary evidence of the loan transaction, including numerous documents bearing the Allens' signatures, were also before the court. At the conclusion of the hearing, this court vacated the TRO. Additionally, convinced of the likelihood of criminal activity by the Allens, the court referred this matter to the United States Attorney's office for the Eastern District of New York.[2] Finally, this court entered an order prohibiting the transfer of assets from the Allens' bank account.

## IV. *Lawyer's Title and the Agreement with Union Federal and Country-wide*

As noted, Lawyers Title issued a policy of title insurance in the loan amount to Union Federal whereby Lawyers Title insured title with respect to the mortgage. After the making of cross-claims in this action as well as claims made pursuant to the title insurance policy, Lawyer's Title, Union Federal and Countrywide entered into a settlement agreement. The agreement noted that Union Federal had assigned the mortgage and policy of title insurance to Countrywide. In consideration of a payment in excess of $300,000 by Lawyer's Title to Countrywide, Countrywide agreed to assign its right to payment on the mortgage and note to Lawyers Title. Lawyers Title, in turn, agreed to move to substitute itself as a party to this action.

## V. *The Present Motion*

For reasons that cannot be explained, the signature and notary pages of the actual mortgage securing the loan are missing. Because these pages cannot be found, it has not been possible to record the mortgage. .

The inability to record the mortgage prompted Countrywide to assert a counterclaim seeking imposition of an equitable mortgage. Prior to assignment of its rights of collection, Countrywide moved for summary judgment on its claim of an equitable mortgage. Lawyers' Title, Countrywide's successor in interest, now seeks the same relief.

## DISCUSSION

### I. *Legal Principles*

#### A. *Summary Judgment Standards*

The standards for granting summary judgment are familiar. Such motions are properly granted only where the moving party can establish an absence of issues of material fact and an entitlement to judgment as a matter of law. Fed.R.Civ.P.

---

**2.** The Allens were advised, at the time of the hearing, of their Fifth Amendment right against self-incrimination. Since the hearing, Mrs. Allen has been named in a state court indictment based upon matters relating to this transaction.

56(c). Where the moving party establishes an entitlement to relief, the non-moving party must establish the existence of a material issue of fact for trial to avoid summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

## II. *Standards for Granting an Equitable Mortgage*

■ Under New York law, an equitable mortgage is a transaction that has the intent, but not the form of a mortgage, which a court will enforce in equity to the same extent as a mortgage. *Mailloux v. Spuck,* 87 A.D.2d 736, 737, 449 N.Y.S.2d 69, 70 (3d Dep't 1982).

■ A court will impose an equitable mortgage where the facts surrounding a transaction evidence that the parties intended that a specific piece of property is to be held or transferred to secure an obligation. *See Teichman v. Community Hospital of Western Suffolk,* 87 N.Y.2d 514, 520 640 N.Y.S.2d 472, 475, 663 N.E.2d 628 (1996); *James v. Alderton Dock Yards,* 256 N.Y. 298, 303, 176 N.E. 401 (1931); *Corcillo v. Martut, Inc.,* 58 A.D.2d 617, 618, 395 N.Y.S.2d 696, 698, *aff'd.,* 45 N.Y.2d 878, 410 N.Y.S.2d 811, 383 N.E.2d 113 (1978); *Newcourt Realty Holding Corp. v. Gabel,* 28 A.D.2d 704, 280 N.Y.S.2d 1020, 1021 (2d Dep't 1967).

■ An equitable mortgage can be imposed where a legal mortgage "fails for the want of some solemnity." *Payne v. Wilson,* 74 N.Y. 348, 351 (1878). Thus, for example, an equitable mortgage may be imposed where money is advanced upon a verbal agreement to secure the debt by a mortgage on real property, but the agreement, for one reason or another, never culminates in a signed writing. *E.g., Federal Deposit Ins. Corp. v. Five Star*

*Mgmt., Inc.,* 258 A.D.2d 15, 21, 692 N.Y.S.2d 69, 73 (1st Dep't 1999), citing, *Sprague v. Cochran,* 144 N.Y. 104, 112–13, 38 N.E. 1000 (1894).

## III. *Disposition of the Motion*

■ The documents before the court as well as testimony earlier taken in this matter demonstrates that there is no question regarding the following facts.[3] On March 30, 2001, Union Federal extended a loan in the amount of $272,000 to the Allens. The parties to this transaction intended that loan be secured by a mortgage on the Subject Premises. The proceeds of the loan were disbursed to the Allens in the following manner.

A first mortgage, in the amount of $167,369.55, held by the Bank of America was paid off as was a second mortgage in the amount of $39,319.93, held by Champion Mortgage Company. Three checks made directly payable to creditors were mailed to the Allens who, in turn, sent those checks to the creditors. Those checks were in the amounts of $1,117.00; $7,175.00 and $1,112.00 and were payable to Discover Card, MBNA and Radio Shack, respectively. Finally, a check in the amount of approximately $32,000 was given to the Allens at the closing, to use in any manner they saw fit.

Based upon these transactions, it is clear to this court that the Allens applied for the loan and received its full benefit. There is no question but that the parties intended to secure the loan with a mortgage to the Subject Premises. The testimony of the Allen to the contrary, is simply without credibility. This is particularly so in light of the fact that the Allens are both attorneys who could not possibly have been "duped," as they now assert. In view of

---

**3.** In addition to the documents submitted in support of the summary judgment motion the court relies upon the sworn testimony taken at the hearing held in this matter on July 6, 2001.

the fact that the signature page of the mortgage cannot now be located, the court holds that Lawyers Title is entitled to imposition of an equitable mortgage on the Subject Premises.

### CONCLUSION

The motion seeking summary judgment on the claim for imposition of an equitable mortgage is granted. The Clerk of the Court is directed to terminate the motion.

SO ORDERED.