GASTON H. HUGHES, as Administrator with the Will Annexed of ALBERT E. HUGHES, Deceased, Respondent, *v.* EDWARD M. HARLAM, Appellant.

MORTGAGE — WHEN PERSONAL REPRESENTATIVE MAY REDEEM. A written agreement transferring personal property subject to the conditi( n that if the transferer pays the amount due on a certain promissory note the transfer shall be null and void, but in the event of his death before payment it shall become unconditional and absolute, the primary object of which was to provide security for a loan made to him, is a mortgage and not a conditional sale and upon his death before the payment of t; e loan his personal representative may redeem, notwithstanding the provision for an absolute transfer in that event, since the right of redemption conferred by law cannot be waived or abandoned by any stipulation of the parties made at the time even if embodied in the mortgage.

*Hughes* v. *Harlam,* 37 App. Div. 528, affirmed.

(Argued March 8, 1901; decided April 16, 1901.)

APPEAL from a final judgment of the Supreme Court, entered in favor of plaintiff November 29, 1899, upon an order of the Appellate Division in the first judicial department, affirming an interlocutory judgment entered upon a decision of the court on trial at Special Term.

This action was brought to recover and redeem certain personal property, of which defendant, upon the death of plaintiff's intestate, took possession, claiming to be entitled to the same under an alleged bill of sale.

The facts, so far as material, are stated in the opinion.

*Delos McCurdy* and *Joseph Rosenzweig* for appellant. The defendant acquired a defeasible title to the mortgaged property which became absolute upon the failure of Hughes to pay the sum secured thereby at the specified time. (*Brown* v. *Bement,* 8 Johns. 96; *Ackley* v. *Finch,* 7 Cow. 290; *Langdon* v. *Buel,* 9 Wend. 80; *Patchen* v. *Pierce,* 12 Wend. 61; *Edwards* v. *F. F. Ins. & L. Co.,* 21 Wend. 487; *White* v. *Cole,* 24 Wend. 143; *Case* v. *Boughton,* 11 Wend. 107; *Fuller* v. *Acker,* 1 Hill, 473; *Charter* v. *Stevens,* 3 Den. 35.) A contract is open to construction only when upon the face of

the instrument it appears that its meaning is doubtful or its language ambiguous or uncertain. (2 Pars. on Cont. [4th ed.] 11; *Dwight* v. *G. L. Ins. Co.*, 103 N. Y. 346.) It was within the power of the deceased, and he had the legal right, to sell or dispose of his property upon such terms and conditions as he saw fit. He could sell it by a sale *in præsenti*, or by an executory agreement to take effect on the happening of any certain or uncertain contingency. (*Marks* v. *Pell*, 1 Johns. Ch. 598; *Dey* v. *Dunham*, 2 Johns. Ch. 190; *Strong* v. *Stewart*, 4 Johns. Ch. 167; *James* v. *Johnson*, 6 Johns. Ch. 417; *Conway* v. *Alexander*, 7 Cranch, 218; *Glover* v. *Payn*, 19 Wend. 518; *Henry* v. *Davis*, 7 Johns. Ch. 40; *Clark* v. *Henry*, 2 Cow. 324; *Slee* v. *Manhattan Co.*, 1 Paige, 77; *Whittick* v. *Kane*, 1 Paige, 206.) The agreement is not a chattel mortgage and was not intended to be one. It is, in the plainest terms, a conditional sale, to be void if the deceased lived and personally paid during his lifetime, and to be unconditional and absolute if he died before he personally paid as aforesaid. (*Slee* v. *Manhattan Co.*, 1 Paige, 48; *Henry* v. *Davis*, 7 Johns. Ch. 40; *Odell* v. *Montross*, 68 N. Y. 504; *Bonham* v. *Newcomb*, Ventris, 364.)

*William F. MacRae* for respondent. Plaintiff is entitled to judgment for the redemption or recovery of the property as matter of law upon the express terms of the instrument, which are the very words of a chattel mortgage, the clause confining redemption to the mortgagor personally being absolutely void. (Jones on Mort. §§ 1039, 1041; *Vernon* v. *Bethell*, 2 Eden, 110; *Johnston* v. *Gray*, 16 S. & R. [Penn.] 361; *Bayley* v. *Bailey*, 71 Mass. 405; *Henry* v. *Davis*, 7 Johns. Ch. 40; *Villa* v. *Rodigeras*, 12 Wall. 323; *Peugh* v. *Davis*, 96 U. S. 337; 15 Am. & Eng. Ency. of Law, 827.) The instrument in itself must be construed as a mortgage, and plaintiff having duly tendered and offered to pay the indebtedness before suit, and also having alleged a willingness to pay any amount due thereon in the complaint, the right to maintain an action for the recovery of the property is unques-

tionable. (*Kortright* v. *Cady*, 21 N. Y. 343; *Casserly* v. *Witherbee*, 119 N. Y. 526; *Cass* v. *Higenbotam*, 100 N. Y. 253; *Tiffany* v. *St. John*, 65 N. Y. 318; *Hudson* v. *Swan*, 83 N. Y. 558; *Horn* v. *Keteltas*, 46 N. Y. 606; *Porter* v. *Parmley*, 52 N. Y. 188.)

PARKER, Ch. J.    Albert E. Hughes, at the time of the execution of the agreement herein by the defendant and himself, received from defendant the sum of three thousand dollars, and died before paying the loan.    Defendant thereupon took possession of the property, claiming to be the absolute owner by virtue of the agreement.    But the judgment under review provides that the administrator of Hughes' estate is entitled to redeem upon the payment of the amount due upon the note less the amounts realized by the defendant upon the conduct of the business.    The agreement is as follows:

" Know All Men By These Presents:

" That I, Albert E. Hughes, of the City, County and State of New York, party of the first part, for and in consideration of one dollar and other valuable considerations to me duly had and received from Edward M. Harlam, also of the City, County and State of New York, party of the second part, at and before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have bargained, sold, granted, assigned and delivered and by these presents do grant and convey unto the party of the second part, his executors, administrators and assigns, all my right, title and interest to and in a certain preparation known as Albert's Rheumatic and Gout Remedy, Together with the right to the sole use of the name, designation, label and other appurtenances thereof, and together with the stock of goods, fixtures and furnishings now in my store at No. 430 Hudson street, New York City, and together with the good will, name and style of the business now controlled by me, the headquarters of which now is at said store.

" But the above grant and conveyance is made upon the following conditions:

" Should I, the party of the first part, pay unto the party of the second part, his executors, administrators or assigns, the sum of three thousand dollars in payment of my certain promissory note for that amount of even date herewith, made to the order of the party of the second part, then, and in that event, the above grant and conveyance is to become absolutely null and void, such payment, however, to be made by me personally during my lifetime ; it being agreed and understood that should I die before the payment of the said note as aforesaid, then, and in that event, the said grant and conveyance shall be and become unconditional and absolute.

" And I, the party of the first part, do covenant and agree with the party of the second part that I will not sell, assign, transfer or in any manner or way whatsoever impart the way or means of making the said preparation known as Albert's Rheumatic and Gout Remedy, nor the ingredients therein contained, nor the right to manufacture, sell or vend the same to any person whatsoever, and that no person shall make, manufacture, sell or vend the same by or through any way, means or knowledge given or imparted by me to such person or persons either directly or indirectly.

" And I do solemnly assure all persons to whom these presents shall come, and especially the party of the second part, that I have not at or before the ensealing and delivering of these presents, assigned, sold, transferred or in any way parted with, to any other person any of the rights and property hereby given, granted and conveyed, or so attempted to be, to the party of the second part.

" And the party of the second part does hereby covenant and agree with the party of the first part that at the maturity of the hereinbefore-mentioned note, and upon payment to him of the interest then due thereon, he will, at the request of the said party of the first part, extend the time of payment of said note for a like period of time as originally agreed and specified in said note." Signed by the parties.

Appellant's counsel contends that the instrument is neither a mortgage nor a conditional sale, but, if a mortgage at all, is

both, because it contains two sharply-contrasted conditions: 1. If Hughes lives he will pay and redeem. 2. If he dies, there is to be no payment and no redemption, the property to be surrendered and accepted in payment of the debt. It is often difficult to determine whether a particular transaction constitutes a mortgage or a conditional sale in which a right is reserved to the grantor to redeem or repurchase the property at a stipulated price within a given time. In all such cases the only safe criterion by which to determine the question is the intention of the parties to be ascertained either from the terms of the written contract or in proper cases from that instrument considered in connection with the circumstances attending its making. " In all doubtful cases a contract will be construed to be a mortgage rather than a conditional sale, because, in the case of a mortgage, the mortgagor, although he has not strictly complied with the terms of the mortgage, still has his right of redemption, while in the case of a conditional sale, without strict compliance, the rights of the conditional purchaser are forfeited." (*Matthews* v. *Sheehan*, 69 N. Y. 585.)

That the agreement expresses an intent to transfer the property absolutely to Harlam upon Hughes' death without paying the loan is unquestionably true, but that fact, considered with the other provisions of the agreement, does not necessarily give to the entire agreement the character of a conditional sale, for a sale by the one party and a purchase by the other was not the leading object of the transaction. Indeed, the agreement clearly indicates that the one did not intend to buy, nor the other to sell, unless it should turn out that the borrower should not be able to pay the loan before his death. It was a contingency, therefore, that the parties were providing against — a contingency which experience teaches cannot safely be left out of account when making a loan.

Nor can it be said that the agreement did not contain an element wholly foreign to the spirit which usually pervades mortgages, in that it in terms provided that failure by Hughes

to pay in his lifetime the debt secured by the agreement should operate to vest the title absolutely in his creditor. Nevertheless it seems to us that the main purpose of the parties to the agreement, as manifested by its terms, was on the one part to procure a loan of money and on the other to assure its repayment, and it has been a long-established rule in equity that the "court looks beyond the terms of the instrument to the real transaction, and when that is shown to be one of security, and not of sale, it will give effect to the actual contract of the parties." (*Peugh* v. *Davis*, 96 U. S. 332.)

It is not needful in this case to look beyond the agreement itself to see that the principal transaction was one of security — not of sale — and to discover that the provision for absolute transfer was the method selected by the parties for making the security immediately available in the event of the death of Hughes without making his promise good to pay the loan. So while it is true, as counsel for the appellant so ably argues, that this agreement contains elements of both mortgage and conditional sale, still, as the leading purpose of the instrument is that of security, it must be governed by those principles which courts of equity have long applied to agreements for security. When the security consists of personal property the instrument pledging it as security for a loan operates to transfer the legal title to the mortgagee to be defeated only by the full performance of the condition ; or as it is expressed by BEARDSLEY, J., in the old case of *Charter* v. *Stevens* (3 Denio, 33), the mortgage transfers " a defeasible title to the property mortgaged." The mortgagor can revest himself by complying with the conditions of the defeasance, but if he fails to do it he has no remedy at law. Courts of equity, however, long ago decided that a mortgagor so situated might be permitted to redeem. (Story on Bailments, 287.) Indeed the Supreme Court of the United States as well as this court has held that such right of redemption cannot be waived or abandoned by any stipulation of the parties made at the time even if embodied in the mortgage. (*Peugh* v. *Davis*, 96 U. S. 332 ; *Mooney* v. *Byrne*, 163 N. Y. 86.)

The right to redeem which the law reads into a mortgage whenever it is not inserted by the parties, Hughes and Harlam attempted to stipulate out of this agreement by providing that while Hughes could revest himself with the title by complying with the conditions during his life, yet in the event of failure to do so the transfer should " become unconditional and absolute." But we have so recently held that equity will prevent this from being done, in the case of *Mooney* v. *Byrne* (*supra*), in which the authorities were carefully considered and many of them cited with approval, that without further discussion we shall content ourselves with holding that that case is in point and controlling in this one in view of our conclusion that the primary object of the instrument under consideration was to provide security for a loan made by Harlam to Hughes.

The judgment should be affirmed, with costs.

O'Brien, Bartlett, Haight, Martin, Vann and Landon, JJ., concur.

Judgment affirmed.