PER CURIAM:
Walter G. Cook has filed two consolidated appeals, one (Dkt. No. 82-7261) from an order of the Southern District of New York dated March 16, 1982, and the other (Dkt. No. 82-7351) from an order of the same court dated April 19, 1982. Both orders were made and entered by Judge Abraham D. Sofaer upon the recommended decisions of Magistrate Kent Sinclair, Jr., after hearings. The March 16, 1982, order denied Cook’s motion for a determination de novo of Magistrate Sinclair’s Recommended Decision dated March 8, 1982, to the effect that a deed transferring to plaintiffs pursuant to a court-ordered settlement dated October 2, 1981, certain real estate known as Whispering Pines, which was held by Cook in the name of a corporate alter ego named Larch-Tree Co., Inc. (“LTC”), was an effective transfer of ownership rather than a mortgage and that a conditional provision in the settlement for payment of $250,000 was not void or unenforceable as a penalty. The order dated April 19,1982, (1) adjudged Cook in contempt for disobedience of the court’s prior orders, (2) directed that if by April 22, 1982, Cook did not cause LTC to withdraw a sham Chapter XI petition in bankruptcy filed on March 17, 1982, in the Eastern District of New York (Dkt. No. *725 882-80654-18) he be taken into custody by the U. S. Marshal and confined until he had purged his contempt by withdrawing the bankruptcy petition and by applying to the court for an order fixing the amount of fines payable into court arising out of his 1980 and 1981 contempts, (3) ordered LTC to withdraw the bankruptcy petition by April 22,1982, (4) ordered the defendants to pay plaintiffs’ costs and fees in bringing the motion, and (5) declared the estate known as Whispering Pines to be the property of plaintiffs. Both orders of the district court are affirmed.
On July 17, 1979, the plaintiffs herein filed a complaint alleging that Cook and others had defrauded them by mismanaging and misappropriating funds invested in real estate limited partnerships. Cook did not respond to the complaint and did not appear at a deposition for which he had been subpoenaed. On plaintiffs’ motion for entry of a default judgment Judge Sofaer, on September 20, 1979, ruled:
“Whereas it appears that defendant Cook has wilfully and intentionally refused to attend a scheduled deposition, and has with notice intentionally failed to respond to this order to show cause, and has repeatedly contacted attorneys without actually retaining one to represent him for the apparent purpose of creating confusion, delay and the appearance of an intention to comply, the motion to enter default judgment against Cook is hereby granted, on condition that the default become final 10 days after Cook is served with notice of its entry; and in addition the plaintiffs are granted the [sic] expenses, including attorney’s fees, caused by Cook’s failure. See F.R.Civ.P. 37(b)(2)(c) & (d).”
Cook finally responded, averting the entry of a default judgment.
On April 20,1980, all parties entered into a settlement agreement pursuant to which all defendants, including Cook and certain of his alter ego corporations, agreed to make substantial payments to the plaintiffs. Cook, however, defaulted in performing his obligations under the agreement and judgment was entered on it by Judge Sofaer on June 18, 1980. In order to locate his assets and enforce the judgment the plaintiffs repeatedly sought to depose Cook and review documentary evidence showing that his corporations were merely alter egos. Cook ignored court orders to appear for depositions until July 12, 1980, when he finally appeared.
In August of 1980 the plaintiffs, in their continuing effort to enforce the judgment, subpoenaed corporate records from the alter ego corporations. Cook and his corporations ignored the subpoenas until after Judge Sofaer heard argument on a motion to hold the corporations in contempt. On November 12, 1980, they produced a small number of documents but failed to produce the bulk of the documents requested. On November 13,1980, Judge Sofaer found the corporations in contempt and imposed fines which, beginning November 17, 1980, amounted to $1,000 a day. Cook and his corporations, however, continued to ignore the court’s orders.
On February 3,1981, the plaintiffs moved for an order that Cook, the controlling force behind the corporations, be held responsible for their contemptuous conduct and that he be found in contempt. Judge Sofaer referred the motion to Magistrate Sinclair. In March and April 1981, Magistrate Sinclair held evidentiary hearings at which evidence of Cook’s foregoing repeated contumacious conduct was introduced. It was established that one of Cook’s corporate alter egos, LTC, held in its name for Cook title to an estate called “Whispering Pines.” It was further established that the corporations, including LTC, were mere shells and were alter egos of Cook. Acting on detailed recommended findings and conclusions of Magistrate Sinclair, Judge Sofaer on July 15, 1981, signed an order adjudging Cook in civil contempt and directing that he be incarcerated until he purged himself by causing the subpoenaed corporations to comply with the court’s earlier orders. Cook then went into hiding but in September, 1981, was arrested as he tried to cross the New York-Canadian border and was jailed.
*726 The parties then, under the supervision of Magistrate Sinclair, negotiated in open court a settlement under which Cook executed a confession of judgment in the sum of $630,000 in satisfaction of all of plaintiffs’ claims, including those for unpaid balances, legal fees, interest, costs, and compensatory fines that had been imposed for contempt. To assure plaintiffs of payment Cook also executed a deed transferring to plaintiffs title to Whispering Pines, subject to pre-existing mortgages. The parties further agreed that if Cook paid $380,000 in installments to plaintiffs according to a specified timetable the $630,000 would be discounted by $250,000, but that if Cook defaulted in making the time payments he would continue to be obligated to pay the $630,000 judgment. All parties stated in the court’s presence that the payment of $250,000 was not intended to be a penalty. The parties further agreed that the deed was to be placed in escrow to be delivered to plaintiffs in case of default and that in the event of default plaintiffs could, 45 days after the default, transfer title to Whispering Pines to the highest bidder, retaining $630,000 less amounts paid on prior mortgages and amounts already paid to them by Cook. Any balance was then to be paid to Cook. Cook also agreed to vacate Whispering Pines, and if he failed to do so, to waive any legal right to stay eviction and to be evicted by a U. S. Marshal.
By order dated October 2, 1981, Judge Sofaer expressly “approved and made binding” the terms of the settlement but continued to hold Cook in contempt for failure to produce documents and pay fines already imposed. However, his order provisionally released Cook from custody on condition that if Cook complied with the terms of the settlement agreement he would purge himself of those aspects of his contempt arising from his failure to produce documents and to pay the compensatory portions of the fines that had been imposed. The order further provided that Cook should be rearrested if he failed, within 175 days of fully carrying out the settlement agreement, to apply to the court for an order fixing the amount and scheduling payment of the fines payable into court.
On February 2,1982, Cook defaulted, failing to pay $185,000 due under the October 2,1981, settlement and order. On February 18,1982, he moved to modify the settlement agreement, claiming that $250,000 of the $630,000 settlement figure was a “penalty” and that the deed to Whispering Pines was a mortgage, requiring that foreclosure and sale be conducted in accordance with New York statutory procedure. After hearing the parties Magistrate Sinclair found, in a recommended decision dated March 8, 1982, that the October 2, 1981, settlement and order was the result of extended court-administered bargaining between parties represented by competent counsel, that the provision for payment of $250,000 in addition to $380,000 was not a penalty, and that the terms of the settlement and order, which required transfer of the real estate to plaintiffs, were enforceable, notwithstanding the provisions of N. Y. Real Property Law § 320, in view of the circumstances, including the intent of the parties and court that the deed would not be challenged as a mortgage. Moreover he concluded that the defendants were estopped by reason of their representations, upon which plaintiffs had relied, from denying the effectiveness of the deed of transfer.
On March 16,1982, Judge Sofaer adopted Magistrate Sinclair’s recommended decision and denied defendants’ motion for a de novo determination of the issues presented to Magistrate Sinclair, made after defendants had filed objections thereto, and for modification of the October 2, 1981, agreement and order.
On March 17, 1982, LTC, Cook’s alter ego in whose name the title to Whispering Pines Co., Inc. property had been held prior to his execution of the deed transferring it to plaintiffs, filed a voluntary Chapter XI petition in bankruptcy in the Eastern District of New York, claiming ownership of Whispering Pines and no other assets. On March 18,1982, Judge Sofaer, in accordance with his denial on March 16, 1982, of defendants’ motion, signed an order enjoining the defendants from taking any action to *727 interfere with the sale of Whispering Pines by plaintiffs or the eviction of Cook from the premises. On March 19,1982, Cook and LTC, without notifying plaintiffs, obtained an ex parte order from Bankruptcy Judge C. Albert Párente prohibiting plaintiffs from transferring title to the property.
On March 22, 1982, plaintiffs moved to hold Cook in contempt and to compel a withdrawal of the Chapter XI bankruptcy petition. LTC, which was notified of the motion, appeared and argued only that it had an absolute statutory right to file under Chapter XI and that its having done so deprived the district court of jurisdiction. After receiving further briefs and affidavits and hearing argument, Magistrate Sinclair found on April 7, 1982, that the purported bankruptcy of LTC was a farce and sham because the corporation was an inactive shell used as an alter ego by Cook, which had never done any business, had no bank accounts or records, had filed no tax returns, and had no independent status or existence. He further found that the petition had been filed fraudulently and in bad faith, on the eve of the sale of Whispering Pines, in violation of the district court’s earlier orders and to evade Cook’s obligations thereunder. No party submitted any papers contending that Magistrate Sinclair’s findings were erroneous or required further hearing.
On April 19,1982, Judge Sofaer issued an order referring to Cook’s past “egregious violation of court order and subpoenas” and directing that in view of Cook’s “extraordinary and continuing record of misconduct evidenced in this case,” he be adjudged in civil contempt and ordered to be taken into custody if he should fail by April 22, 1982, to purge himself by causing the withdrawal of the Chapter XI petition in bankruptcy and by applying to the court for an order fixing the amount of the fines payable into court arising from the 1980 and 1981 con-tempts. The order also directed LTC to withdraw the petition in bankruptcy and the defendants to pay the plaintiffs’ costs and expenses in bringing the motion. It declared that Whispering Pines “is now, and was prior to the filing of the bankruptcy petition, the property of plaintiffs.” Bankruptcy Judge Párente was requested, if LTC did not withdraw the petition, to dismiss it sua sponte. On April 23, 1982, upon Cook’s failure to obey the April 19 order, Judge Sofaer ordered Cook to be arrested but, upon Cook’s filing a petition to fix the fines, the order was stayed until May 11, 1982. After Cook appealed the April 19, 1982 order we on May 11, 1982, granted a stay of a portion of that order and of the purported bankruptcy proceeding until the hearing of the appeals.
DISCUSSION
With respect to the March 16 order Cook argues that the deed to Whispering Pines is a mortgage governed by New York statutory provisions, including N. Y. Real Property Law § 320 (definition of a mortgage), R.P.A.P.L. §§ 1301, 1351(1), 1402 (procedures for judicial foreclosure and sale), C.P.L.R. § 5236 (time and notice of foreclosure sale), R.P.A.P.L. §§ 1354(3) (disposition of surplus), 1355(1) (report of sale), 1355(2) (confirmation), 1362 (distribution of surplus), and 1371 (deficiency judgment). We disagree. Although the October 2, 1981, agreement between the parties bore some aspects of a mortgage, notably the provisions that the transfer of the title to Whispering Pines was to assure payment of the $630,000 judgment if Cook should default and that any surplus after sale was to be repaid to Cook, there are other aspects which render this agreement enforceable. It was the clear intention of the parties, approved and ordered by the district court, that the transaction was not to be treated as a mortgage governed by the foregoing provisions of New York law. We recognize that ordinarily parties may not waive the latter provisions since the interposition of state judicial procedure is designed to protect debtors against overreaching on the part of creditors. Maher v. Alma Realty Co., Inc., 70 A.D.2d 931, 931, 417 N.Y.S.2d 748, 749 (2d Dept. 1979). However, here we are dealing not solely with a security agreement but with an order of the district court directing, after thorough and careful con *728 sideration of all evidence and facts involved, that the approved agreement was to be “binding” on the parties and be carried out according to its specific terms. There was no appeal from this order. In this unusual situation the court’s approval of the specific intention of the parties incorporated in its order provided adequate judicial protection of the debtor against overreaching and should be enforced as ordered even though, without this protection, the foregoing New York procedures might be invokable. Moreover, the defendants are in any event estopped from challenging the terms of the October 2, 1981, agreement and court order since they induced the plaintiffs to enter into it and the court to approve it by representing that an absolute deed to Whispering Pines was being given and the plaintiffs relied thereon to their detriment, refraining from taking steps that would have resulted in a court order directing Cook, pending his continued incarceration, to arrange for sale of the property and payment to plaintiffs of the balance due them. Since these representations took place in federal court federal law of estoppel applies and Maher v. Alma Realty Co., Inc., supra, relied upon by the dissent, is inapplicable.
Cook’s further argument that $250,000 of the confession of judgment in the sum of $630,000 amounts to a void and unenforceable penalty must also be rejected. The plaintiffs had sustained damages, costs and expenses well in excess of $400,-000, not including the compensatory portion of fines imposed by the court. The parties, moreover, had expressly agreed that $250,-000 was not a penalty and this agreement was approved and ordered by the district court. These representations, upon which plaintiffs relied to their detriment, estop the defendants from now contending that the $250,000 payment is an unenforceable penalty.
Turning to the April 19, 1982, order, Cook contends that it should be set aside as an attempt by the district court to abort or interfere with a bankruptcy proceeding not before it. We disagree. Prior to the filing of the Chapter XI petition the court had ruled that plaintiffs were entitled to Whispering Pines, the sole purported asset of LTC, a shell corporation which was Cook’s alter ego. The $630,000 confession of judgment and deed had been executed by Cook individually and on behalf of LTC. Since that corporation was nothing more than Cook’s alter ego, the court’s decision was equally applicable to it. The court was fully familiar with Cook’s long record of willful, contemptuous, and contumacious behavior and could take judicial notice of his use of his other shell corporations to defraud creditors by petitioning in bankruptcy. See In re Eden Associates, 13 B.R. 578 (Bkrtcy.S.D.N.Y.1981). Against this background, the court’s April 19, 1982, order was designed to preclude Cook from using the sham bankruptcy device without preventing any creditor of LTC from petitioning for the protection of the bankruptcy law. The sham nature of the Chapter XI petition is confirmed by the fact that except for plaintiffs the only creditors Cook was able to name were his brother, mother, attorney and an employee.
We recognized that ordinarily the filing of a bankruptcy petition automatically stays an ongoing suit or the enforcement of a previously obtained judgment. See 11 U.S.C. § 362. We do not believe, however, that § 362 was intended to deprive a federal district court of jurisdiction to deal with circumstances such as these. In view of this long and extraordinary history of misconduct, which clearly demonstrated that Cook filed the sham Chapter XI petition in a bad faith, vexatious and contemptuous effort to violate the district court’s prior orders, the court was entitled to exercise its inherent power under the All Writs Act, 28 U.S.C. § 1651 to enjoin such an attempt to defeat the court’s orders by resorting to frivolous litigation elsewhere. See Harvey Aluminum, Inc. v. American Cyanamid Co., 203 F.2d 105, 108 (2d Cir.), cert. denied, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953); Ward v. Pennsylvania New York Central Transportation Co., 456 F.2d 1046, 1048 (2d Cir. 1972); United States v. Mansion House *729 Center North Redevelopment Co., 594 F.2d 653, 656-57 (8th Cir.), cert. denied, 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 45 (1979).
Both orders of the district court are affirmed. The stays are vacated. Costs are awarded to appellees. The mandate shall issue forthwith.