GEORGE C. PRATT, Circuit Judge,
concurring in part and dissenting in part:
While I agree with all other parts of the majority’s decision, I am unable to accept their view that the conveyance of Whispering Pines should be considered a deed and not a mortgage. In working out the settlement agreement before the magistrate, the parties attempted to do precisely what New York law forbids: to make a deed out of this conveyance which was “intended only as a security in the nature of a mortgage.”
New York’s Real Property Law § 320 provides in relevant part:
A deed conveying real property, which, by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an actual conveyance in terms, must be considered a mortgage * * *. (emphasis supplied).
On its face this legislative command is unequivocal, and case law has not authorized exceptions to its absolute terms. Hughes v. Harlam, 166 N.Y. 427, 432, 60 N.E. 22 (1901); Mooney v. Byrne, 163 N.Y. 86, 91-92, 57 N.E. 163 (1900); Corcillo v. Martut, Inc., 58 A.D.2d 617, 618, 395 N.Y.S.2d 696, 698 (2d Dep’t 1977), aff’d, 45 N.Y.2d 878, 410 N.Y.S.2d 811, 383 N.E.2d 113 (1978); Maher v. Alma Realty Co., Inc., 70 A.D.2d 931, 417 N.Y.S.2d 748 (2d Dep’t 1979).
New York has long prevented parties to a real estate transaction from avoiding the protections due a mortgagor by disguising the nature of the transaction or by agreeing to place a different label on it. Hughes v. Harlam, supra; Mooney v. Byrne, supra. Early cases refer to the maxim, “once a mortgage always a mortgage”. See, e.g., Macauley v. Smith, 132 N.Y. 524, 531, 30 N.E. 997 (1892).
Even before the current statutory prohibition enacted in 1896, 1896 N.Y.Laws, ch. 547, § 269, courts of equity had adopted a similar view designed to prevent creditors from taking undue advantage of debtors. The attributes of a mortgage, including a judicially supervised sale and the debtor’s right of redemption, were viewed as necessary to protect the debtor, whose bargaining position was assumed to be unequal to the creditors. Over 100 years ago the Supreme Court of the United States commented:
[The equity of redemption] is deemed essential to the protection of the debtor, who, under pressing necessities, will often submit to ruinous conditions, expecting or hoping to be able to repay the loan at its maturity, and thus prevent the conditions from being enforced and the property sacrificed.
Peugh v. Davis, 96 U.S. 332, 337, 24 L.Ed. 775 (1878).
So deeply rooted was this protection that a debtor simply was not allowed to waive or abandon the right of redemption. “Even an express stipulation not to redeem does not prevent redemption, because the right is created by law.” Mooney v. Byrne, supra, 163 N.Y. at 92, 57 N.E. 163. See Peugh v. Davis, supra; Hughes v. Harlam, supra; Maher v. Alma Realty Co., Inc., supra.
Moreover, one New York appellate court has refused to give validity to a debtor’s waiver, in open court, of the protections afforded to mortgagors under New York law. In circumstances similar to those here, an initial foreclosure action involving the parties was settled in court on the record and with the court’s approval. The mortgagor agreed that the deed to his home would be held in escrow, that upon any default in the settlement, the mortgagee had the right to record the deed and assume absolute title to the mortgaged premises, and that the mortgagor would vacate the premises upon default without further judicial proceedings. Record on appeal in Maher v. Alma Realty Co., Inc., supra. When the debtor defaulted on the settlement several years later and the creditor sought to enforce the settlement terms, the debtor *730 commenced an action seeking a declaration that the creditor held only a mortgage and not a deed to the property. The lower court agreed with the creditor that the debtor had waived the protections afforded to mortgagors under New York law, but the appellate division reversed, holding that the purported waiver was ineffective: “The plaintiffs cannot waive their right of redemption even by a stipulation in open court, since public policy forbids such a waiver * * Maher v. Alma Realty Co., supra, 70 A.D.2d at 932, 417 N.Y.S.2d at 749 (citations omitted). Thus the appellate division has passed upon and rejected the same arguments on state law that are urged by plaintiffs and adopted by the majority on this appeal.
To determine the effect of § 320 upon a particular real estate transaction we must seek the parties’ “intent” at the time of the conveyance, Bielawski v. Bazar, 47 A.D.2d 435, 367 N.Y.S.2d 322 (3d Dep’t 1975); King v. WNY Holding Corp., 38 A.D.2d 685, 327 N.Y.S.2d 258 (4th Dep’t 1971), and we must focus upon the nature of the transaction, not upon what ultimate legal consequences the parties said they wished to attach to it. Under the terms of the settlement agreement, the deed was placed in escrow; it could be recorded only upon Cook’s default in making scheduled payments; upon default in any payment, plaintiffs could accelerate the entire debt; upon default, plaintiffs could sell the real property and apply the proceeds toward payment of the debt, with any surplus moneys returned to Cook; and if the proceeds were insufficient to satisfy the debt, Cook would remain liable for the deficiency. To me, such provisions establish conclusively that the parties intended the instrument “only as a security in the nature of a mortgage”.
True, the parties recited a contrary intent by labeling the instrument a “deed”, and declaring that it was “the intent of the parties and court that the deed would not be challenged as a mortgage”. They even discussed with the magistrate and with each other their desire to avoid the consequences of § 320. While the majority is satisfied that “the court’s approval of the specific intention of the parties incorporated in its order provided adequate judicial protection of the debtor against overreaching”, Maj. Op. at 727-28, New York does not permit such “judicial protection” to overcome § 320, Maher v. Alma Realty Co., Inc., supra. The rule on this state law issue should be no different simply because it was a federal not a state judge who supervised the settlement. In New York State, public policy as decreed by the legislature establishes that when dealing with real property it is substance, not form that controls. Thus, even though parties may employ “an actual conveyance in terms”, nevertheless, when the nature of the transaction is such that the written instrument “appears to be intended only as a security in the nature of a mortgage”, then the instrument “must be considered a mortgage”.
None of the facts relied upon by the majority — neither Cook’s express waiver of § 320’s protection, nor the negotiation of the settlement in open court, nor the district court’s approval of the settlement agreement, nor Cook’s reprehensible conduct throughout these proceedings — not even all of these taken together authorize us to disregard New York’s law and public policy as set forth in Real Property Law § 320.
Neither do principles of estoppel have any proper application in this context. It is argued that by expressly waiving his rights under § 320 and declaring that notwithstanding the provisions of that section, the deed would not be challenged as a mortgage, Cook should be estopped by his agreement because the plaintiffs relied upon his representations to their detriment. If such circumstances could circumvent § 320, however, then it would be a simple matter for any creditor to structure a mortgage transaction as a deed and create the same kind of “estoppel” merely by including the appropriate language in the conveyance or in a collateral agreement. It is this kind of circumvention that § 320 is designed to prevent.
*731 In my view, plaintiffs obtained only a mortgage to Whispering Pines and should be required to follow the same rules for foreclosure applicable to all other mortgagees under New York law. In structuring a transaction affecting New York real property not even a federal court can properly ignore the state legislature’s commands.
Cook also argues that the additional $250,000 that became due upon his failure to pay the settlement figure of $380,000 should be deemed an unenforceable penalty. While I agree that the mere fact the $250,-000 was labeled “liquidated damages” and not a “penalty” is not determinative, on this record there is ample evidence to support the parties’ characterization of the payment as “liquidated damages”. The underlying debt was $280,000. Attorneys’ fees, interest, and additional expenses bring that sum substantially above the settlement figure of $380,000, perhaps by as much as $50,000. In addition, as part of the settlement, plaintiffs waived their entitlement to any portion of the more than one million dollars in civil contempt fines that the court could at some future time conclude were due to them. Finally, if Cook were to continue his history of defaulting on settlement agreements and resisting collection efforts, plaintiffs could reasonably be expected to expend considerably more money in obtaining any balance due them. Under all of these circumstances, the additional $250,000 agreed to be due in the event of default represented a reasonable forecast of plaintiffs’ damages if Cook were to default on the October 1 agreement. I therefore agree that the additional $250,000 due upon Cook’s default was not a “penalty”. See Walter E. Heller & Co. v. American Flyers Airline Corp., 459 F.2d 896 (2d Cir. 1972). I also agree that the extraordinary record of Cook’s misconduct justifies the extreme remedies invoked by the court below.
Because I believe that New York law does not permit any other conclusion, I respectfully dissent from the majority’s opinion to the extent it affirms the lower court’s declaration that the conveyance of Whispering Pines to plaintiffs was a deed and not a mortgage.