683 F.2d 723
 11 Fed. R. Evid. Serv. 671
 Monroe R. MEYERSON, Sidney Milgrim and Central Rigging and
Contracting Corporation, Plaintiffs-Appellees,
v.
William J. WERNER, William C. Sherr, Robert Sylvor, Bandler
& Kass, S.D. Associates, Eastern Development and Investment
Corp., Eastern Development& Investment Corp.-Maine,
Larch-Tree Co., Inc., WJC Realty Co., Inc., Mid-City
Management Col, Inc., General Eastern Building Corp.,
Tex/Miss Apartment Associates and Lawton Associates, Defendants,
and
Walter Cook, Defendant-Appellant.
Monroe R. MEYERSON, Sidney Milgrim, and Central Rigging and
Contracting Corporation, Plaintiffs-Appellees,
v.
William J. WERNER, William C. Sherr, Robert Sylvor, Bandler
& Kass, S.D. Associates, Eastern Development & Investment
Corp.-Maine, Larch-Tree Co., Inc., WJC Realty Co., Inc.,
Mid-City Management Co., Inc., General Eastern Building
Corp., Tex/Miss Apartment Associates and Lawton Associates, Defendants,
and
Walter Cook and Eastern Development and Investment Corp.,
Defendants-Appellants.
 Nos. 1351, 1361, Dockets 82-7261, 82-7351.
 United States Court of Appeals,
Second Circuit.
 Argued May 21, 1982.
Decided July 14, 1982.
As Amended July 23, 1982.
 
 Sheldon D. Camhy, New York City (Richard M. Goldstein, John Paul Fulco, John G. Nicolich, Shea & Gould, New York City, of counsel), for defendant-appellant Walter Cook.
 James Schreiber, New York City (Michael R. Klekman, Gerhard A. Miller, Damien E. Mysak, Schwartz, Klink & Schreiber, P. C., New York City, of counsel), for plaintiffs-appellees.
 Before MANSFIELD and MESKILL, Circuit Judges, and PRATT, Circuit Judge.*
 PER CURIAM:
 
 
 1
 Walter G. Cook has filed two consolidated appeals, one (Dkt. No. 82-7261) from an order of the Southern District of New York dated March 16, 1982, and the other (Dkt. No. 82-7351) from an order of the same court dated April 19, 1982. Both orders were made and entered by Judge Abraham D. Sofaer upon the recommended decisions of Magistrate Kent Sinclair, Jr., after hearings. The March 16, 1982, order denied Cook's motion for a determination de novo of Magistrate Sinclair's Recommended Decision dated March 8, 1982, to the effect that a deed transferring to plaintiffs pursuant to a court-ordered settlement dated October 2, 1981, certain real estate known as Whispering Pines, which was held by Cook in the name of a corporate alter ego named Larch-Tree Co., Inc. ("LTC"), was an effective transfer of ownership rather than a mortgage and that a conditional provision in the settlement for payment of $250,000 was not void or unenforceable as a penalty. The order dated April 19, 1982, (1) adjudged Cook in contempt for disobedience of the court's prior orders, (2) directed that if by April 22, 1982, Cook did not cause LTC to withdraw a sham Chapter XI petition in bankruptcy filed on March 17, 1982, in the Eastern District of New York (Dkt. No. 882-80654-18) he be taken into custody by the U. S. Marshal and confined until he had purged his contempt by withdrawing the bankruptcy petition and by applying to the court for an order fixing the amount of fines payable into court arising out of his 1980 and 1981 contempts, (3) ordered LTC to withdraw the bankruptcy petition by April 22, 1982, (4) ordered the defendants to pay plaintiffs' costs and fees in bringing the motion, and (5) declared the estate known as Whispering Pines to be the property of plaintiffs. Both orders of the district court are affirmed.
 
 
 2
 On July 17, 1979, the plaintiffs herein filed a complaint alleging that Cook and others had defrauded them by mismanaging and misappropriating funds invested in real estate limited partnerships. Cook did not respond to the complaint and did not appear at a deposition for which he had been subpoenaed. On plaintiffs' motion for entry of a default judgment Judge Sofaer, on September 20, 1979, ruled:
 
 
 3
 "Whereas it appears that defendant Cook has wilfully and intentionally refused to attend a scheduled deposition, and has with notice intentionally failed to respond to this order to show cause, and has repeatedly contacted attorneys without actually retaining one to represent him for the apparent purpose of creating confusion, delay and the appearance of an intention to comply, the motion to enter default judgment against Cook is hereby granted, on condition that the default become final 10 days after Cook is served with notice of its entry; and in addition the plaintiffs are granted the (sic) expenses, including attorney's fees, caused by Cook's failure. See F.R.Civ.P. 37(b)(2)(c) & (d)."
 
 
 4
 Cook finally responded, averting the entry of a default judgment.
 
 
 5
 On April 20, 1980, all parties entered into a settlement agreement pursuant to which all defendants, including Cook and certain of his alter ego corporations, agreed to make substantial payments to the plaintiffs. Cook, however, defaulted in performing his obligations under the agreement and judgment was entered on it by Judge Sofaer on June 18, 1980. In order to locate his assets and enforce the judgment the plaintiffs repeatedly sought to depose Cook and review documentary evidence showing that his corporations were merely alter egos. Cook ignored court orders to appear for depositions until July 12, 1980, when he finally appeared.
 
 
 6
 In August of 1980 the plaintiffs, in their continuing effort to enforce the judgment, subpoenaed corporate records from the alter ego corporations. Cook and his corporations ignored the subpoenas until after Judge Sofaer heard argument on a motion to hold the corporations in contempt. On November 12, 1980, they produced a small number of documents but failed to produce the bulk of the documents requested. On November 13, 1980, Judge Sofaer found the corporations in contempt and imposed fines which, beginning November 17, 1980, amounted to $1,000 a day. Cook and his corporations, however, continued to ignore the court's orders.
 
 
 7
 On February 3, 1981, the plaintiffs moved for an order that Cook, the controlling force behind the corporations, be held responsible for their contemptuous conduct and that he be found in contempt. Judge Sofaer referred the motion to Magistrate Sinclair. In March and April 1981, Magistrate Sinclair held evidentiary hearings at which evidence of Cook's foregoing repeated contumacious conduct was introduced. It was established that one of Cook's corporate alter egos, LTC, held in its name for Cook title to an estate called "Whispering Pines." It was further established that the corporations, including LTC, were mere shells and were alter egos of Cook. Acting on detailed recommended findings and conclusions of Magistrate Sinclair, Judge Sofaer on July 15, 1981, signed an order adjudging Cook in civil contempt and directing that he be incarcerated until he purged himself by causing the subpoenaed corporations to comply with the court's earlier orders. Cook then went into hiding but in September, 1981, was arrested as he tried to cross the New York-Canadian border and was jailed.
 
 
 8
 The parties then, under the supervision of Magistrate Sinclair, negotiated in open court a settlement under which Cook executed a confession of judgment in the sum of $630,000 in satisfaction of all of plaintiffs' claims, including those for unpaid balances, legal fees, interest, costs, and compensatory fines that had been imposed for contempt. To assure plaintiffs of payment Cook also executed a deed transferring to plaintiffs title to Whispering Pines, subject to pre-existing mortgages. The parties further agreed that if Cook paid $380,000 in installments to plaintiffs according to a specified timetable the $630,000 would be discounted by $250,000, but that if Cook defaulted in making the time payments he would continue to be obligated to pay the $630,000 judgment. All parties stated in the court's presence that the payment of $250,000 was not intended to be a penalty. The parties further agreed that the deed was to be placed in escrow to be delivered to plaintiffs in case of default and that in the event of default plaintiffs could, 45 days after the default, transfer title to Whispering Pines to the highest bidder, retaining $630,000 less amounts paid on prior mortgages and amounts already paid to them by Cook. Any balance was then to be paid to Cook. Cook also agreed to vacate Whispering Pines, and if he failed to do so, to waive any legal right to stay eviction and to be evicted by a U. S. Marshal.
 
 
 9
 By order dated October 2, 1981, Judge Sofaer expressly "approved and made binding" the terms of the settlement but continued to hold Cook in contempt for failure to produce documents and pay fines already imposed. However, his order provisionally released Cook from custody on condition that if Cook complied with the terms of the settlement agreement he would purge himself of those aspects of his contempt arising from his failure to produce documents and to pay the compensatory portions of the fines that had been imposed. The order further provided that Cook should be rearrested if he failed, within 175 days of fully carrying out the settlement agreement, to apply to the court for an order fixing the amount and scheduling payment of the fines payable into court.
 
 
 10
 On February 2, 1982, Cook defaulted, failing to pay $185,000 due under the October 2, 1981, settlement and order. On February 18, 1982, he moved to modify the settlement agreement, claiming that $250,000 of the $630,000 settlement figure was a "penalty" and that the deed to Whispering Pines was a mortgage, requiring that foreclosure and sale be conducted in accordance with New York statutory procedure. After hearing the parties Magistrate Sinclair found, in a recommended decision dated March 8, 1982, that the October 2, 1981, settlement and order was the result of extended court-administered bargaining between parties represented by competent counsel, that the provision for payment of $250,000 in addition to $380,000 was not a penalty, and that the terms of the settlement and order, which required transfer of the real estate to plaintiffs, were enforceable, notwithstanding the provisions of N. Y. Real Property Law § 320, in view of the circumstances, including the intent of the parties and court that the deed would not be challenged as a mortgage. Moreover he concluded that the defendants were estopped by reason of their representations, upon which plaintiffs had relied, from denying the effectiveness of the deed of transfer.
 
 
 11
 On March 16, 1982, Judge Sofaer adopted Magistrate Sinclair's recommended decision and denied defendants' motion for a de novo determination of the issues presented to Magistrate Sinclair, made after defendants had filed objections thereto, and for modification of the October 2, 1981, agreement and order.
 
 
 12
 On March 17, 1982, LTC, Cook's alter ego in whose name the title to Whispering Pines Co., Inc. property had been held prior to his execution of the deed transferring it to plaintiffs, filed a voluntary Chapter XI petition in bankruptcy in the Eastern District of New York, claiming ownership of Whispering Pines and no other assets. On March 18, 1982, Judge Sofaer, in accordance with his denial on March 16, 1982, of defendants' motion, signed an order enjoining the defendants from taking any action to interfere with the sale of Whispering Pines by plaintiffs or the eviction of Cook from the premises. On March 19, 1982, Cook and LTC, without notifying plaintiffs, obtained an ex parte order from Bankruptcy Judge C. Albert Parente prohibiting plaintiffs from transferring title to the property.
 
 
 13
 On March 22, 1982, plaintiffs moved to hold Cook in contempt and to compel a withdrawal of the Chapter XI bankruptcy petition. LTC, which was notified of the motion, appeared and argued only that it had an absolute statutory right to file under Chapter XI and that its having done so deprived the district court of jurisdiction. After receiving further briefs and affidavits and hearing argument, Magistrate Sinclair found on April 7, 1982, that the purported bankruptcy of LTC was a farce and sham because the corporation was an inactive shell used as an alter ego by Cook, which had never done any business, had no bank accounts or records, had filed no tax returns, and had no independent status or existence. He further found that the petition had been filed fraudulently and in bad faith, on the eve of the sale of Whispering Pines, in violation of the district court's earlier orders and to evade Cook's obligations thereunder. No party submitted any papers contending that Magistrate Sinclair's findings were erroneous or required further hearing.
 
 
 14
 On April 19, 1982, Judge Sofaer issued an order referring to Cook's past "egregious violation of court order and subpoenas" and directing that in view of Cook's "extraordinary and continuing record of misconduct evidenced in this case," he be adjudged in civil contempt and ordered to be taken into custody if he should fail by April 22, 1982, to purge himself by causing the withdrawal of the Chapter XI petition in bankruptcy and by applying to the court for an order fixing the amount of the fines payable into court arising from the 1980 and 1981 contempts. The order also directed LTC to withdraw the petition in bankruptcy and the defendants to pay the plaintiffs' costs and expenses in bringing the motion. It declared that Whispering Pines "is now, and was prior to the filing of the bankruptcy petition, the property of plaintiffs." Bankruptcy Judge Parente was requested, if LTC did not withdraw the petition, to dismiss it sua sponte. On April 23, 1982, upon Cook's failure to obey the April 19 order, Judge Sofaer ordered Cook to be arrested but, upon Cook's filing a petition to fix the fines, the order was stayed until May 11, 1982. After Cook appealed the April 19, 1982 order we on May 11, 1982, granted a stay of a portion of that order and of the purported bankruptcy proceeding until the hearing of the appeals.
 
 DISCUSSION
 
 15
 With respect to the March 16 order Cook argues that the deed to Whispering Pines is a mortgage governed by New York statutory provisions, including N. Y. Real Property Law § 320 (definition of a mortgage), R.P.A.P.L. §§ 1301, 1351(1), 1402 (procedures for judicial foreclosure and sale), C.P.L.R. § 5236 (time and notice of foreclosure sale), R.P.A.P.L. §§ 1354(3) (disposition of surplus), 1355(1) (report of sale), 1355(2) (confirmation), 1362 (distribution of surplus), and 1371 (deficiency judgment). We disagree. Although the October 2, 1981, agreement between the parties bore some aspects of a mortgage, notably the provisions that the transfer of the title to Whispering Pines was to assure payment of the $630,000 judgment if Cook should default and that any surplus after sale was to be repaid to Cook, there are other aspects which render this agreement enforceable. It was the clear intention of the parties, approved and ordered by the district court, that the transaction was not to be treated as a mortgage governed by the foregoing provisions of New York law. We recognize that ordinarily parties may not waive the latter provisions since the interposition of state judicial procedure is designed to protect debtors against overreaching on the part of creditors. Maher v. Alma Realty Co., Inc., 70 A.D.2d 931, 931, 417 N.Y.S.2d 748, 749 (2d Dept. 1979). However, here we are dealing not solely with a security agreement but with an order of the district court directing, after thorough and careful consideration of all evidence and facts involved, that the approved agreement was to be "binding" on the parties and be carried out according to its specific terms. There was no appeal from this order. In this unusual situation the court's approval of the specific intention of the parties incorporated in its order provided adequate judicial protection of the debtor against overreaching and should be enforced as ordered even though, without this protection, the foregoing New York procedures might be invokable. Moreover, the defendants are in any event estopped from challenging the terms of the October 2, 1981, agreement and court order since they induced the plaintiffs to enter into it and the court to approve it by representing that an absolute deed to Whispering Pines was being given and the plaintiffs relied thereon to their detriment, refraining from taking steps that would have resulted in a court order directing Cook, pending his continued incarceration, to arrange for sale of the property and payment to plaintiffs of the balance due them. Since these representations took place in federal court federal law of estoppel applies and Maher v. Alma Realty Co., Inc., supra, relied upon by the dissent, is inapplicable.
 
 
 16
 Cook's further argument that $250,000 of the confession of judgment in the sum of $630,000 amounts to a void and unenforceable penalty must also be rejected. The plaintiffs had sustained damages, costs and expenses well in excess of $400,000, not including the compensatory portion of fines imposed by the court. The parties, moreover, had expressly agreed that $250,000 was not a penalty and this agreement was approved and ordered by the district court. These representations, upon which plaintiffs relied to their detriment, estop the defendants from now contending that the $250,000 payment is an unenforceable penalty.
 
 
 17
 Turning to the April 19, 1982, order, Cook contends that it should be set aside as an attempt by the district court to abort or interfere with a bankruptcy proceeding not before it. We disagree. Prior to the filing of the Chapter XI petition the court had ruled that plaintiffs were entitled to Whispering Pines, the sole purported asset of LTC, a shell corporation which was Cook's alter ego. The $630,000 confession of judgment and deed had been executed by Cook individually and on behalf of LTC. Since that corporation was nothing more than Cook's alter ego, the court's decision was equally applicable to it. The court was fully familiar with Cook's long record of willful, contemptuous, and contumacious behavior and could take judicial notice of his use of his other shell corporations to defraud creditors by petitioning in bankruptcy. See In re Eden Associates, 13 B.R. 578 (Bkrtcy.S.D.N.Y.1981). Against this background, the court's April 19, 1982, order was designed to preclude Cook from using the sham bankruptcy device without preventing any creditor of LTC from petitioning for the protection of the bankruptcy law. The sham nature of the Chapter XI petition is confirmed by the fact that except for plaintiffs the only creditors Cook was able to name were his brother, mother, attorney and an employee.
 
 
 18
 We recognized that ordinarily the filing of a bankruptcy petition automatically stays an ongoing suit or the enforcement of a previously obtained judgment. See 11 U.S.C. § 362. We do not believe, however, that § 362 was intended to deprive a federal district court of jurisdiction to deal with circumstances such as these. In view of this long and extraordinary history of misconduct, which clearly demonstrated that Cook filed the sham Chapter XI petition in a bad faith, vexatious and contemptuous effort to violate the district court's prior orders, the court was entitled to exercise its inherent power under the All Writs Act, 28 U.S.C. § 1651 to enjoin such an attempt to defeat the court's orders by resorting to frivolous litigation elsewhere. See Harvey Aluminum, Inc. v. American Cyanamid Co., 203 F.2d 105, 108 (2d Cir.), cert. denied, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953); Ward v. Pennsylvania New York Central Transportation Co., 456 F.2d 1046, 1048 (2d Cir. 1972); United States v. Mansion House Center North Redevelopment Co., 594 F.2d 653, 656-57 (8th Cir.), cert. denied, 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 45 (1979).
 
 
 19
 Both orders of the district court are affirmed. The stays are vacated. Costs are awarded to appellees. The mandate shall issue forthwith.
 
 
 20
 GEORGE C. PRATT, Circuit Judge, concurring in part and dissenting in part:
 
 
 21
 While I agree with all other parts of the majority's decision, I am unable to accept their view that the conveyance of Whispering Pines should be considered a deed and not a mortgage. In working out the settlement agreement before the magistrate, the parties attempted to do precisely what New York law forbids: to make a deed out of this conveyance which was "intended only as a security in the nature of a mortgage."
 
 
 22
 New York's Real Property Law § 320 provides in relevant part:
 
 
 23
 A deed conveying real property, which, by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an actual conveyance in terms, must be considered a mortgage * * *. (emphasis supplied).
 
 
 24
 On its face this legislative command is unequivocal, and case law has not authorized exceptions to its absolute terms. Hughes v. Harlam, 166 N.Y. 427, 432, 60 N.E. 22 (1901); Mooney v. Byrne, 163 N.Y. 86, 91-92, 57 N.E. 163 (1900); Corcillo v. Martut, Inc., 58 A.D.2d 617, 618, 395 N.Y.S.2d 696, 698 (2d Dep't 1977), aff'd, 45 N.Y.2d 878, 410 N.Y.S.2d 811, 383 N.E.2d 113 (1978); Maher v. Alma Realty Co., Inc., 70 A.D.2d 931, 417 N.Y.S.2d 748 (2d Dep't 1979).
 
 
 25
 New York has long prevented parties to a real estate transaction from avoiding the protections due a mortgagor by disguising the nature of the transaction or by agreeing to place a different label on it. Hughes v. Harlam, supra; Mooney v. Byrne, supra. Early cases refer to the maxim, "once a mortgage always a mortgage". See, e.g., Macauley v. Smith, 132 N.Y. 524, 531, 30 N.E. 997 (1892).
 
 
 26
 Even before the current statutory prohibition enacted in 1896, 1896 N.Y.Laws, ch. 547, § 269, courts of equity had adopted a similar view designed to prevent creditors from taking undue advantage of debtors. The attributes of a mortgage, including a judicially supervised sale and the debtor's right of redemption, were viewed as necessary to protect the debtor, whose bargaining position was assumed to be unequal to the creditors. Over 100 years ago the Supreme Court of the United States commented:
 
 
 27
 (The equity of redemption) is deemed essential to the protection of the debtor, who, under pressing necessities, will often submit to ruinous conditions, expecting or hoping to be able to repay the loan at its maturity, and thus prevent the conditions from being enforced and the property sacrificed.
 
 
 28
 Peugh v. Davis, 96 U.S. 332, 337, 24 L.Ed. 775 (1878).
 
 
 29
 So deeply rooted was this protection that a debtor simply was not allowed to waive or abandon the right of redemption. "Even an express stipulation not to redeem does not prevent redemption, because the right is created by law." Mooney v. Byrne, supra, 163 N.Y. at 92, 57 N.E. 163. See Peugh v. Davis, supra; Hughes v. Harlam, supra; Maher v. Alma Realty Co., Inc., supra.
 
 
 30
 Moreover, one New York appellate court has refused to give validity to a debtor's waiver, in open court, of the protections afforded to mortgagors under New York law. In circumstances similar to those here, an initial foreclosure action involving the parties was settled in court on the record and with the court's approval. The mortgagor agreed that the deed to his home would be held in escrow, that upon any default in the settlement, the mortgagee had the right to record the deed and assume absolute title to the mortgaged premises, and that the mortgagor would vacate the premises upon default without further judicial proceedings. Record on appeal in Maher v. Alma Realty Co., Inc., supra. When the debtor defaulted on the settlement several years later and the creditor sought to enforce the settlement terms, the debtor commenced an action seeking a declaration that the creditor held only a mortgage and not a deed to the property. The lower court agreed with the creditor that the debtor had waived the protections afforded to mortgagors under New York law, but the appellate division reversed, holding that the purported waiver was ineffective: "The plaintiffs cannot waive their right of redemption even by a stipulation in open court, since public policy forbids such a waiver * * *." Maher v. Alma Realty Co., supra, 70 A.D.2d at 932, 417 N.Y.S.2d at 749 (citations omitted). Thus the appellate division has passed upon and rejected the same arguments on state law that are urged by plaintiffs and adopted by the majority on this appeal.
 
 
 31
 To determine the effect of § 320 upon a particular real estate transaction we must seek the parties' "intent" at the time of the conveyance, Bielawski v. Bazar, 47 A.D.2d 435, 367 N.Y.S.2d 322 (3d Dep't 1975); King v. WNY Holding Corp., 38 A.D.2d 685, 327 N.Y.S.2d 258 (4th Dep't 1971), and we must focus upon the nature of the transaction, not upon what ultimate legal consequences the parties said they wished to attach to it. Under the terms of the settlement agreement, the deed was placed in escrow; it could be recorded only upon Cook's default in making scheduled payments; upon default in any payment, plaintiffs could accelerate the entire debt; upon default, plaintiffs could sell the real property and apply the proceeds toward payment of the debt, with any surplus moneys returned to Cook; and if the proceeds were insufficient to satisfy the debt, Cook would remain liable for the deficiency. To me, such provisions establish conclusively that the parties intended the instrument "only as a security in the nature of a mortgage".
 
 
 32
 True, the parties recited a contrary intent by labeling the instrument a "deed", and declaring that it was "the intent of the parties and court that the deed would not be challenged as a mortgage". They even discussed with the magistrate and with each other their desire to avoid the consequences of § 320. While the majority is satisfied that "the court's approval of the specific intention of the parties incorporated in its order provided adequate judicial protection of the debtor against overreaching", Maj. Op. at ----, New York does not permit such "judicial protection" to overcome § 320, Maher v. Alma Realty Co., Inc., supra. The rule on this state law issue should be no different simply because it was a federal not a state judge who supervised the settlement. In New York State, public policy as decreed by the legislature establishes that when dealing with real property it is substance, not form that controls. Thus, even though parties may employ "an actual conveyance in terms", nevertheless, when the nature of the transaction is such that the written instrument "appears to be intended only as a security in the nature of a mortgage", then the instrument "must be considered a mortgage".
 
 
 33
 None of the facts relied upon by the majority-neither Cook's express waiver of § 320's protection, nor the negotiation of the settlement in open court, nor the district court's approval of the settlement agreement, nor Cook's reprehensible conduct throughout these proceedings-not even all of these taken together authorize us to disregard New York's law and public policy as set forth in Real Property Law § 320.
 
 
 34
 Neither do principles of estoppel have any proper application in this context. It is argued that by expressly waiving his rights under § 320 and declaring that notwithstanding the provisions of that section, the deed would not be challenged as a mortgage, Cook should be estopped by his agreement because the plaintiffs relied upon his representations to their detriment. If such circumstances could circumvent § 320, however, then it would be a simple matter for any creditor to structure a mortgage transaction as a deed and create the same kind of "estoppel" merely by including the appropriate language in the conveyance or in a collateral agreement. It is this kind of circumvention that § 320 is designed to prevent.
 
 
 35
 In my view, plaintiffs obtained only a mortgage to Whispering Pines and should be required to follow the same rules for foreclosure applicable to all other mortgagees under New York law. In structuring a transaction affecting New York real property not even a federal court can properly ignore the state legislature's commands.
 
 
 36
 Cook also argues that the additional $250,000 that became due upon his failure to pay the settlement figure of $380,000 should be deemed an unenforceable penalty. While I agree that the mere fact the $250,000 was labeled "liquidated damages" and not a "penalty" is not determinative, on this record there is ample evidence to support the parties' characterization of the payment as "liquidated damages". The underlying debt was $280,000. Attorneys' fees, interest, and additional expenses bring that sum substantially above the settlement figure of $380,000, perhaps by as much as $50,000. In addition, as part of the settlement, plaintiffs waived their entitlement to any portion of the more than one million dollars in civil contempt fines that the court could at some future time conclude were due to them. Finally, if Cook were to continue his history of defaulting on settlement agreements and resisting collection efforts, plaintiffs could reasonably be expected to expend considerably more money in obtaining any balance due them. Under all of these circumstances, the additional $250,000 agreed to be due in the event of default represented a reasonable forecast of plaintiffs' damages if Cook were to default on the October 1 agreement. I therefore agree that the additional $250,000 due upon Cook's default was not a "penalty". See generally, Walter E. Heller & Co. v. American Flyers Airline Corp., 459 F.2d 896 (2d Cir. 1972). I also agree that the extraordinary record of Cook's misconduct justifies the extreme remedies invoked by the court below.
 
 
 37
 Because I believe that New York law does not permit any other conclusion, I respectfully dissent from the majority's opinion to the extent it affirms the lower court's declaration that the conveyance of Whispering Pines to plaintiffs was a deed and not a mortgage.
 
 
 
 *
 When this appeal was heard, Judge Pratt was a District Judge for the Eastern District of New York, sitting by designation. He was inducted as a judge of this Court on June 29, 1982