SEC v. Goto                          CV-03-490-JD  11/18/04
             UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE


Securities and Exchange Commission

        v.                           Civil No. 03-490-JD
                                     Opinion No. 2004 DNH 164
Koji Goto and
Shaleen Cassily Goto


                         O R D E R


     The Securities and Exchange Commission moves to hold
defendant Koji Goto in contempt of this court's December 3, 2003,
order because he filed a petition for voluntary bankruptcy.  The
SEC also asks the court to order Goto to withdraw the petition
and to pay expenses incurred as a result.  Goto objects.


                        Background

     Pursuant to its civil enforcement authority, the SEC
commenced this action against Goto and his wife on November 14,
2003.  In its complaint, which alleges that Goto misappropriated
approximately $5 million entrusted to him by investors, the SEC
asked that Goto (1) be enjoined against further violations of
federal securities law, (2) disgorge the investors' funds, and
(3) pay monetary penalties.  The court granted the SEC's
accompanying motion for a temporary restraining order, inter
alia, freezing all assets held by or for the benefit of Goto or

his wife and requiring the submission of certain financial information to the SEC.

Following a hearing, the magistrate entered a preliminary injunction against Goto and his wife on December 3, 2003, incorporating the terms of the November 14, 2003, temporary restraining order.[1]  In relevant part, the preliminary injunction provides that Goto

> shall hold and retain any and all funds and other assets held for [his] direct or indirect benefit, or under [his] direct or indirect control . . . [and] shall prevent any withdrawal, sale, payment, transfer, dissipation, assignment, pledge, alienation, encumbrance, diminution in value or other disposal of any such funds and other assets . . . .

Prelim. Inj. § III.A.  The two banks holding mortgages on the Gotos' home, as well as several individuals who had attached the property through judicial proceedings, subsequently moved to modify the injunction to sell the home at foreclosure.  In relevant part, the court granted these motions on September 13, 2004, over the objections of the Gotos, who wished to sell their home on the open market through a real estate broker.

The foreclosure auction was scheduled to take place on October 21, 2004.  On October 20, 2004, however, Goto filed a voluntary petition for bankruptcy, pursuant to Chapter 11 of the

---

[1]The parties consented to having the magistrate enter a final order on the motion for preliminary injunction.

bankruptcy code, in the United States Bankruptcy Court for the District of New Hampshire. One of the mortgagees responded by moving for relief from the automatic stay in order to proceed with the foreclosure sale. Following a hearing, the bankruptcy court granted the motion on October 21, 2004. The foreclosure auction proceeded without incident on November 4, 2004. On November 3, 2004, however, the SEC filed the instant motion, characterizing Goto's bankruptcy petition as "an attempt to prevent the foreclosure auction" which "directly violated the plain terms of [the] Injunction . . . and was attempted as an end-run around" the order modifying the injunction to permit the foreclosure sale.

## Discussion

The SEC asks the court to hold Goto in contempt of the injunction, to order him to withdraw the bankruptcy petition, and to pay into court the interest that accrued on the mortgages on his home between the dates on which the foreclosure sale was first scheduled to occur and when it actually did. Goto acknowledges in his objection that he filed for bankruptcy to stop the foreclosure auction, but states that he did so "to protect creditors from a fire sale, not harm them," a motive for which he cites a number of his other actions as additional

3

evidence. He also argues that, in any event, the terms of the injunction do not prevent him from filing for bankruptcy.

On this point, the court agrees with Goto. The SEC has failed to explain how Goto's bankruptcy filing amounts to the "withdrawal, sale, payment, transfer, dissipation, assignment, pledge, alienation, encumbrance, diminution in value or other disposal of . . . funds and other assets" as prohibited by the injunction.[2] The SEC's argument in this regard rests entirely on SEC v. Sterns, 1991 WL 204901 (C.D. Cal. Apr. 25, 1991), where the court found that the defendants' bankruptcy filing "violated the terms of [an asset freeze] Order in an apparent attempt to frustrate the relief against them."[3] Id. at *1.

The SEC also takes the position, however, that Goto's bankruptcy petition will not enable him to exercise any control over the assets subject to the injunction, because the proceedings in this court are exempt from the automatic stay by

_____

[2]To the extent the SEC argues that Goto's filing violated the September 13, 2004, order, the court disagrees. As Goto points out, that order simply modified the injunction to allow the foreclosure sale under certain conditions. It did not mandate that the sale take place.

[3]The court also notes that, in Sterns, the court did not expressly consider whether the bankruptcy filing constituted contempt of its order, but whether, in the face of that order, the filing contributed to the "compelling circumstances" necessary to force the defendants to withdraw the petition.

4

virtue of 11 U.S.C. § 362(b)(4). <u>SEC v. Towers Fin. Corp.</u>, 205 B.R. 27, 29-31 (S.D.N.Y. 1997); <u>Bilzerian v. SEC</u>, 146 B.R. 871, 872-73 (Bankr. M.D. Fla. 1992); 3 <u>Collier on Bankruptcy</u> §362.05[5][b][i] (Alan N. Resnick <u>et al.</u>, eds., 15th ed. 2004). By the SEC's own account, then, Goto's petition for bankruptcy will not "frustrate the relief" granted against him in this action.[4] <u>Cf.</u> <u>Sterns</u>, 1991 WL 204901, at *1 (finding "real and imminent danger that, should any assets be left in the control of [the] defendants, those assets would be dissipated or concealed before final judgment in this action"). More significantly, the bankruptcy filing neither directly nor indirectly amounts to a "disposal" of assets in violation of the terms of the injunction. The SEC's motion, insofar as it seeks to hold Goto in contempt for declaring bankruptcy, is denied.[5]

The SEC also asks the court to "exercise its authority under

_____

[4]The decision on whether this proceeding is exempt from the automatic stay belongs to the bankruptcy court in the first instance. <u>See</u> <u>SEC v. An-Car Oil Co.</u>, 604 F.2d 114, 120-21 (1st Cir. 1979). Thus, the court has considered that issue here for the limited purpose of assessing the SEC's argument that Goto's bankruptcy filing will necessarily enable him to take control of the assets subject to the injunction. This court's resolution of that issue is not intended to bind the bankruptcy court.

[5]Because the SEC does not identify the basis of its request that Goto repay the interest incurred as a result of the delay in the foreclosure sale, the court will treat it as a suggested sanction for the alleged contempt manifested by the filing. Because Goto is not in contempt, the request is denied.

the All Writs Act and its broad equity powers" to order Goto to withdraw the bankruptcy petition. "While not common, this [c]ourt may preclude petitions in bankruptcy where there are compelling circumstances." CFTC v. FITC, Inc., 52 B.R. 935, 937 (N.D. Cal. 1985) (citing SEC v. Lincoln Thrift Ass'n, 577 F.2d 600, 609 (9th Cir. 1978)); accord An-Car, 604 F.2d at 119 (considering whether district court abused discretion by terminating receivership instituted in SEC enforcement action in favor of bankruptcy filing).

In support of this relief, the SEC argues that "allowing Goto to maintain a Chapter 11 bankruptcy proceeding creates a substantial risk that Goto, as debtor-in-possession, will be able to dissipate or conceal assets which will inhibit the recovery by investors in this case." Again, this argument contravenes the SEC's own point that the injunction will remain in place despite the bankruptcy and that Goto will therefore remain unable to dispose of any of the subject assets. Cf. FITC, 52 B.R. at 938 (ordering corporate defendant to enforcement proceeding to withdraw bankruptcy petition appointing its president as debtor-in-possession because of, inter alia, "danger that any assets released to [president] will be dispersed, and the fraud against [corporation's] investors will be perpetuated").

The SEC also charges that Goto's "filing is simply a tactic

6

to frustrate the Court-imposed asset freeze and eventual distribution of assets, supervised by this Court, to victims" and, relatedly, that "the dual administration of the assets of Goto in the bankruptcy court and this court would be inefficient and result in conflicting goals."  The First Circuit has indicated, however, that "generally, bankruptcy proceedings are preferred to liquidation of a corporation through an equity receivership."  An-Car, 604 F.2d at 120; see also SEC v. Am. Bd. of Trade, Inc., 830 F.2d 431, 436-38 (2d Cir. 1987).  Although this case, lacking a corporate defendant, will not involve a receivership per se, the First Circuit's admonition applies with equal force here, where the SEC has made plain its intention that the court oversee the distribution of the Gotos' assets.[6]  As the Second Circuit explained in Am. Bd. of Trade, recounting the labors of a district court judge who saddled herself with the task of divvying up the assets of a corporate securities law violator among their many claimants:

> the functions undertaken by the district court in this
> case demonstrate the wisdom of not using a receivership

---

[6]Indeed, in an SEC enforcement proceeding, "a receiver is indistinguishable in his functions, if not his name, from . . . a trustee . . . ."  5E Arnold S. Jacobs, Disclosure and Remedies Under the Securities Laws § 20.111 (2002).  Although the SEC has not requested the appointment of a trustee, the court believes one would be necessary to assist with the administrative demands of distributing the Gotos' assets in this action.

> as a substitute for bankruptcy . . . . [T]he court has taken upon itself the burden of processing proof-of-claim forms filed by thousands of [investors] and other creditors, of setting priorities among classes of creditors, and of administering sales of real property, all without the aid of either the experience of a bankruptcy judge or the guidance of the bankruptcy code.

830 F.2d at 438; see also Lincoln Thrift, 577 F.2d at 605-606 (discussing "sound policy reasons for allowing liquidation to take place only in a court of bankruptcy," e.g., "established system for equitable distribution of the assets to creditors").

This court would face similar administrative burdens were the distribution of the Gotos' assets to proceed solely in this court. Indeed, the court has already been invited to supervise the sale of the Gotos' home, not only directly, but also indirectly by deciding whether to allow a "credit bid" and to disallow interest on the mortgages. Assuming that a bankruptcy proceeding is otherwise appropriate, that court is the superior forum for overseeing the resolution of such issues and the distribution of Goto's assets. See An-Car, 604 F.2d at 120-21 (noting bankruptcy court's "broad powers" to resolve issues raised by defrauded investors' claims to debtor's assets).

The SEC has failed to identify the "compelling circumstances" that might justify abjuring conventional wisdom in this regard. The court cannot accept the SEC's suggestion that

8

Goto acted in bad faith by filing for bankruptcy on the eve of the foreclosure sale. In his objection to the mortgagees' motion, Goto had indicated that he did not object to the sale of the property per se, but simply to its sale at a foreclosure auction, which he believed would achieve a lower price than a sale on the open market and therefore result in less money for everyone. The fact that this court disagreed with him does not delegitimize his subsequent petition for bankruptcy.

Even accepting the SEC's accusation as true, however, the timing of the bankruptcy petition in and of itself does not approach the kind of conduct that has led courts to take the extraordinary step of quashing a bankruptcy filing. Cf. Meyerson v. Werner, 683 F.2d 723, 728 (2d Cir. 1982) (noting debtor's "long record of willful, contemptuous, and contumacious behavior" and fact that he named only relatives and agents as creditors in petition); FTIC, 52 B.R. at 937-38 (treating filing by president on behalf of corporation as unauthorized, because receiver already appointed, and noting "remote . . . location chosen by the debtor in which to file, [its] refusal to disclose the petition to its counsel (who subsequently withdrew from the case as a result), and the generally uncooperative position maintained by the defendants throughout the receivership"). Nor has this court had the opportunity to develop an "intimate knowledge of

9

the factual data" here such that newly instituted bankruptcy proceedings would entail duplicative efforts. Cf. Lincoln Trust, 577 F.2d at 609. Therefore, the SEC's motion is denied insofar as it asks this court to order Goto to withdraw his bankruptcy petition.

Conclusion

For the foregoing reasons, the SEC's motion for an order holding Goto in contempt, requiring him to withdraw his bankruptcy petition, and sanctioning him with a monetary penalty (document no. 52) is DENIED.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

November 18, 2004

cc:   John L. Allen, Esquire
      Peter D. Anderson, Esquire
      Edward C. Dial Jr., Esquire
      William S. Gannon, Esquire
      Edward A. Haffer, Esquire
      John Paul Kacavas, Esquire
      Mark D. Kanakis, Esquire
      Ian D. Roffman, Esquire
      Veronic Caballero Viveiros, Esquire